OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Underlying the complex factual scenario that follows is the question of when an application for agency review became “final” so as to trigger the 60-day Statute of Limitations under Executive Law § 818 (1).
 

 
 *450
 
 In November 1995, appellant Essex County Board of Supervisors solicited proposals from private entities seeking to buy its landfill, a state-of-the-art facility located within the Adirondack Park. The County accepted a proposal submitted by appellant Serkil, L.L.C., which was contingent on the County obtaining all necessary operating permit modifications to allow for an increase, from 95 tons to 500 tons, in the amount of solid waste that could be received each day in landfill “Cell No. 1.”
 

 In an effort to meet SerkiPs conditions, the County applied for an amendment to its operating permit, issued in 1992 by the Department of Environmental Conservation (DEC). Because of the landfill’s location within the Adirondack Park, the County’s application was reviewed in accordance with procedures set forth in a 1976 Memorandum of Understanding (Memorandum) entered into by the DEC, the Adirondack Park Agency (APA) and the Department of Health (DOH). The objectives of that Memorandum were elimination of duplicative effort and procedural conflicts and implementation of a coordinated review process for Adirondack Park projects, which are often subject to regulation by all three agencies. The Memorandum specifies which of the three agencies — the DEC, the APA or the DOH — will be “lead agency” for various types of projects, and imposes on the lead agency responsibility for coordinating the project review, accepting applications and transmitting determinations.
 

 On December 4, 1995, the County submitted its application to the DEC — the agency designated in the Memorandum of Understanding as lead agency for waste disposal projects. The next day, the DEC, again following the terms of the Memorandum, forwarded a copy of the application to the APA. By letter dated December 8, 1995, the APA notified the DEC that it did not have permit jurisdiction over the County’s application to modify the tonnage received in Cell No. 1.
 

 Approximately five weeks later, however, in a press release responding to a January 13, 1996 New York Times article critical of the manner in which the County’s proposed permit modification was being handled, Governor Pataki directed APA Chairman Gregory Campbell to “re-consider whether the agency should conduct a full-blown review of off-site impacts stemming from any expansion of Cell No. 1.” By letter dated January 25, 1996, the APA then informed the County that, after learning more about the proposal, it had become clear that the amendment represented a “material change in terms of
 
 *451
 
 daily tonnage and service area,” and as such the APA intended to assert jurisdiction over the application. The decision to exercise jurisdiction was confirmed by a vote of the APA Board at its February 8, 1996 meeting, and a February 12th letter notified the County of that decision. The letter also informed the County that further information regarding the amendment application process would be forthcoming.
 

 The County disputed every aspect of the APA’s position. As a threshold matter, the County argued, the APA lacked jurisdiction over its application. Furthermore, the County asserted, pursuant to the terms of the Memorandum of Understanding the application filed with the DEC also constituted an application to the APA, and no new application was required. The APA, however, stood by its demands, advising the County in a letter dated February 29th that it was required to file a new application, consisting of a new signature page to be annexed to the copy of the DEC application and responses to interrogatories. The APA further informed the County that the “regulatory time clock” would not begin to run and APA review of the project would not commence until the signature page, signed by the Chairman of the County Board of Supervisors, was submitted to the agency.
 

 The County, however, declined to send a new signature page, and continued to assert that the review time periods set forth under Executive Law § 809 had accrued on December 19th, when the DEC deemed its application complete. As such, reasoned the County, the 90-day period during which the APA was required to review its application had already expired, opening the door for the County to send a demand letter in accordance with Executive Law § 809 (6) (a). Thus, on April 16, 1996, the County sent its demand letter, requesting a decision on the application within five working days. In response, the APA sent a letter of its own, dated April 22, 1996, reiterating its position that the County had not yet submitted the requisite application signature page and that the “section 809 regulatory clock” had therefore not yet begun to run. By letter dated May 1, 1996, the County made a similar five-day demand upon DEC pursuant to ECL 70-0109 (3) (b). On May 9, 1996, the DEC denied the County’s application without prejudice on the ground that it could not render a decision until the APA’s review was complete.
 

 The County and Serkil commenced this CPLR article 78 proceeding on May 16, 1996, arguing that the APA lacked jurisdiction over the application and that they were entitled to
 
 *452
 
 permits both on the merits and by virtue of the agencies’ failure to render a decision on the application within five days following demand. On respondents’ motion to dismiss, Supreme Court dismissed all causes of action asserted against the APA as untimely, rejecting the argument that the APA’s refusal to issue a permit on April 22, 1996 was the date on which the 60-day limitations period set forth in Executive Law § 818 (1) began to run. Instead, the court held that the limitations period accrued on February 8, 1996 — the date on which the APA formally asserted jurisdiction over the County’s application.
 

 The Appellate Division, similarly, found that the claims against the APA were untimely. However, it held that, with regard to the claim regarding the agency’s jurisdictional authority, it was “the APA’s February 29, 1996 letter (if not its Feb. 8, 1996 determination to exercise review jurisdiction) * * * [that] rendered the matter ripe for review under CPLR article 78” (238 AD2d 796, 798). The Appellate Division concluded, therefore, that the limitations period “began to run no later than March 7,1996, when Essex County acknowledged receipt of the February 29, 1996 letter”
 
 (id.).
 

 The Appellate Division also diverged from the trial court’s reasoning by holding that the limitations period for the remaining causes of action against the APA — including the claim that the County and Serkil were entitled to an APA permit on the merits and by virtue of the APA’s failure to render a decision on the County’s application within five days of demand — accrued on February 29, 1996. On that date, the Appellate Division reasoned, the APA “unequivocally advised petitioners, first, that the application submitted to DEC did not in and of itself constitute an application to the APA and, second, that the APA’s ‘regulatory time clock’ had not yet begun to run”
 
 (id.).
 
 “Regardless of the correctness of those conclusions, there can be little question that with the transmittal of its February 29, 1996 letter, the APA ‘had come to “a definitive position” that caused “an actual, concrete injury” ’ that could not be ‘prevented or significantly ameliorated by further administrative action’ ”
 
 (id.).
 

 We agree that appellants’ claims against the APA should be dismissed as untimely.
 

 To challenge an APA determination in a proceeding governed by CPLR article 78, the agency action must be “final” and the application for review submitted no later than 60 days from the effective date of the disputed order or the date when the
 
 *453
 
 contested act or omission occurred (CPLR 7801 [1]; Executive Law § 818 [1]). That rule is easier stated than applied.
 

 The decisive legal question we face is, on the facts presented, when did the APA reach a final determination that rendered appellants’ various claims amenable to article 78 review, triggering the 60-day limitations period? Like the Appellate Division, we conclude that appellants’ claims accrued upon receipt of the February 29th APA letter, which set forth the agency’s definitive position regarding the County’s application and the commencement of the APA review process.
 

 Administrative actions as a rule are not final “unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process”
 
 (Chicago & S. Air Lines v Waterman Corp.,
 
 333 US 103, 113). To determine if agency action is final, therefore, consideration must be given to “the completeness of the administrative action” and “a pragmatic evaluation [must be made] of whether the ‘decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury’ ”
 
 (Church of St. Paul & St. Andrew v Barwick,
 
 67 NY2d 510, 519,
 
 cert denied
 
 479 US 985, quoting
 
 Williamson County Regional Planning Commn. v Hamilton
 
 Bank, 473 US 172, 192-193;
 
 Matter of Edmead v McGuire,
 
 67 NY2d 714, 716 [a “challenged determination is final and binding when it ‘has its impact’ upon the petitioner who is thereby aggrieved”];
 
 see also, Abbott Labs. v Gardner,
 
 387 US 136, 148-149;
 
 Federal Trade Commn. v Standard Oil Co. of Cal.,
 
 449 US 232, 239;
 
 National Treasury Empls. Union v Federal Labor Relations Auth.,
 
 712 F2d 669, 671 [DC Cir] [an agency’s position will not be considered final if it is “tentative, provisional, or contingent, subject to recall, revision, or reconsideration”]).
 

 Thus, a determination will not be deemed final because it stands as the agency’s last word on a discrete legal issue that arises during an administrative proceeding. There must additionally be a finding that the injury purportedly inflicted by the agency may not be “prevented or significantly ameliorated by further administrative action or by steps available to the complaining party”
 
 (Church of St. Paul & St. Andrew v Barwick, supra,
 
 67 NY2d at 520;
 
 Matter of Ward v Bennett,
 
 79 NY2d 394, 400;
 
 de St. Aubin v Flacke,
 
 68 NY2d 66, 75;
 
 Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo,
 
 64 NY2d 233, 240;
 
 Matter of Putnam v City of Water
 
 
 *454
 

 town,
 
 213 AD2d 974, 974-975).
 
 *
 
 If further agency proceedings might render the disputed issue moot or academic, then the agency position cannot be considered “definitive” or the injury “actual” or “concrete.”
 

 On the facts before us, we conclude that the APA reached a final determination with the February 29, 1996 letter unequivocally advising appellants that no application had yet been submitted and the “regulatory time clock” had not yet begun to run with regard to their proposal. The letter set forth the APA’s definitive position and signaled the completion of agency activity. It also inflicted an actual, concrete injury on appellants. By refusing to treat the DEC application as an APA submission under the Memorandum of Understanding, the APA reset the regulatory time clock that had begun to run when the DEC deemed the County’s application complete on December 19, 1995, effectively nullifying any benefits that appellants had already received by operation of Executive Law § 809’s automatic review provisions
 
 (see, e.g.,
 
 Executive Law § 809 [3] [d] [decision to schedule hearing must be made within 60 days of determination of application completeness]). The letter left no doubt that there would be no further administrative action and that the expenditure of additional litigation expense and effort before the APA would do nothing to change the agency’s position or alleviate appellants’ injury.
 

 It is inconsequential that the APA had not yet reached a formal conclusion regarding the County’s proposed modifications. Where, as here, agency action takes the form of a letter notifying petitioners of a definitive agency position, it will be considered a final determination for CPLR 7801 (1) purposes if it causes petitioners actual, concrete injury and no further agency proceedings might alleviate or avoid the injury
 
 (see, Matter of Putnam v City of Watertown, supra,
 
 213 AD2d at 974-975 [agency letter did not constitute a final determination because it did not express definitive position and any harm could have been ameliorated or prevented by further administrative action];
 
 see also, National Automatic Laundry & Cleaning Council v Shultz,
 
 443 F2d 689, 701 [DC Cir]).
 

 We reject appellants’ assertion that their claims did not accrue until April 22, 1996, when they received a response to the Executive Law § 809 (6) (a) demand made on the APA. This argument ignores the fact that none of section 809’s automatic
 
 *455
 
 review provisions take effect until an application has been submitted to or deemed complete by the APA
 
 (see, e.g.,
 
 Executive Law § 809 [2], [3]). Because the February 29th letter made clear that, in the eyes of the APA, no application had yet been submitted, the County knew that the APA would view the demand for a decision under section 809 (6) (a) as baseless and premature
 
 (see, e.g., Matter of Guptill Holding Corp. v Williams,
 
 140 AD2d 12, 20 [Levine, J.]). Indeed, the APA’s response to the demand restated the agency position previously articulated in the February 29th letter: no complete application had been submitted and, consequently, no section 809 regulatory clock had been started.
 

 As such, we conclude that, upon receipt of the February 29th letter, appellants’ claims asserting that the DEC application constituted an application to the APA accrued no later than March 7, 1996, when the County acknowledged receipt of that letter
 
 (New York State Assn. of Counties v Axelrod,
 
 78 NY2d 158). The proceeding commenced on May 16, 1996, therefore, was untimely with respect to those claims
 
 (see,
 
 Executive Law § 818 [1]).
 

 To the extent that the Appellate Division’s decision may be read as holding that the APA’s assertion of jurisdiction on February 8th was a final determination ripe for article 78 review, we disagree. Although the APA’s assertion of jurisdiction may constitute a definitive agency determination, it did not inflict the type of “concrete injury” required for a finding of finality
 
 (see, Federal Trade Commn. v Standard Oil Co. of Cal., supra,
 
 449 US at 242 [imposition of burden of responding to agency charges may be substantial, but it is “different in kind and legal effect” from the burdens attending what may be considered a final agency action];
 
 see also, Aluminum Co. v United States,
 
 790 F2d 938, 941 [DC Cir] [Scalia, J.]).
 

 Indeed, an agency’s erroneous assertion of jurisdiction may ultimately never cause any real injury
 
 (see, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, supra,
 
 64 NY2d at 240 [it must be clear that the injury complained of is not “contingent upon events which may not come to pass”];
 
 Aluminum Co. v United States, supra,
 
 790 F2d at 942 [“The requirement of finality is predicated upon the perception that litigants as a group are best served by a system which prohibits piecemeal appellate consideration of rulings that may ‘fade into insignificance’ by the time the initial decisionmaker disassociates itself from the matter”]). To allow immediate article 78 review of such jurisdictional challenges,
 
 *456
 
 therefore, would unnecessarily interfere with the agency process and waste judicial resources. Accordingly, they should be reviewed by a court only after a final determination — which might effectively render the dispute academic — is reached by the agency. In this case, because the 60-day limitations period began to run upon receipt of the APA’s February 29th letter, the proceeding commenced on May 16, 1996 was also untimely with regard to appellants’ jurisdictional claims (see, Executive Law § 818 [1]).
 

 Finally, appellants’ fourth cause of action alleged that the DEC’s denial of the County’s application was “irrational, arbitrary, capricious, an abuse of discretion, without support in law and fact, affected by an error of law and in violation of lawful procedure.” The fifth cause of action made the same allegations and also asserted that the denial was unconstitutional. In respondents’ brief to this Court, the “DEC acknowledges, as it did in the court below, that it was not moving to dismiss [appellants’] ‘arbitrary and capricious’ allegations.” Furthermore, the DEC concedes that “the remaining allegations challenging the propriety of DEC’s denial of the County’s demand for a permit should be remanded to the Supreme Court for a determination on the merits.” While we affirm the Appellate Division order dismissing appellants’ claims against the APA, in accordance with the DEC’s concession we reverse and remit for consideration of the remaining allegations against the DEC set forth in appellants’ fourth and fifth causes of action. Resolution of appellants’ claim for counsel fees, which was dismissed by the lower court because appellants were not “prevailing parties” under CPLR article 86, plainly must await Supreme Court’s determination.
 

 Accordingly, the order of the Appellate Division should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion, and as so modified, affirmed, without costs.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order modified, etc.
 

 *
 

 While appellants assert that these considerations apply to the closely related doctrine of “ripeness” rather than finality, in fact they apply to both.