OPINION OF THE COURT
Dan Lamont, J.
The proceedings/actions challenge New York State’s $24.9 million land acquisition on July 1, 1999 — the biggest land conservation deal in this State’s history. Plaintiffs-petitioners bring these proceedings/actions seeking to undo New York *340 State’s July 1, 1999 acquisition of 29,000 acres of forest lands and a conservation easement over another 110,000 acres of forest lands located within the Adirondack Park and also seeking damages for the State’s actions. Plaintiffs-petitioners Howard Aubin, Carol W. LaGrasse, Peter J. LaGrasse, and Jane Rose, individually and in her capacity as an officer and representative of the “Champion 45” Fish and Game Clubs (hereinafter petitioners) commenced an action/proceeding by filing a summons, notice of petition, and complaint-petition on October 28, 2000 — which this court will refer to as Aubin I.
On December 16, 1999, the Aubin II plaintiffs-petitioners filed an amended summons, amended notice of pétition, and amended complaint-pietition. The Aubin II plaintiffs-petitioners consist of Howard Aubin; Carol W. LaGrasse; Peter J. LaGrasse; Jane Rose; Vernon K. Rose; St. Lawrence County; Azure Mountain Club, Inc., Joseph P. Trivilino, as secretary-treasurer; Benz Pond Hunting Club, William F. Manning, as president; Madawaska Hunting Club, Patrick J. Peets, as officer; St. Regis Club, Richard Clark, as officer; and Quebec Brook Hunting Club, Thomas Howard, as secretary-treasurer (petitioners). The true nature and characterization of what this court will refer to as Aubin II will be determined hereinafter.
The defendants-respondents State of New York; John Cahill, as the Commissioner of Environmental Conservation of the State of New York; the New York State Department of Environmental Conservation (DEC); the Adirondack Park Agency (Agency); New York State Office of Real Property Services (Real Property Services); H. Carl McCall, as Comptroller of the State of New York (Comptroller); and the Director of the Division of the Budget (Budget) — collectively the State respondents — have made a motion to dismiss the complaints-petitions referred to as Aubin I and Aubin II based upon a multitude of grounds — including the expiration of the applicable Statute of Limitations and the failure to timely serve the respondents.
The defendants-respondents Champion International Corporation (Champion), the Conservation Fund, and the Forestland Group — collectively the private respondents — have also made a motion to dismiss the complaints-petitions upon a multitude of grounds. The petitioners have filed papers in opposition to the respondents’ motions and have also filed a cross motion for an order determining that the date of filing of Aubin II be related back to the date of filing of Aubin I nunc pro tunc.
*341 Background
The Champion lands at issue are located within the Adirondack Park in four counties: Franklin County — the Towns of Duane, Santa Clara and Waverly; St. Lawrence County — the Towns of Hopkinton, Clifton and Clare; Lewis County — the Towns of Croghan and Watson; and Herkimer County — the Town of Webb, collectively referred to as the Champion Towns. The State’s acquisition of these lands was very complex and involved several non-State parties. The acquisition consists of two projects prioritized in the State’s 1995 and 1998 revisions of the Open Space Plan prepared pursuant to ECL 49-0207. The two projects were referred to as the Northern Rivers Flow Corridors Project and the Working Forestlands Project.
In 1993 Champion began the process of divesting its timberlands located in the States of New York, Vermont and New Hampshire. In June 1998 after completing an inventory and evaluation of the timber and other resources on its lands, Champion proposed to convey all its rights to its timber and other resources through a competitive bidding process. The Conservation Fund assisted the aforementioned three States; the Forestland Group (Forestland), a private timber investment concern; and interests affiliated with Forestland in the negotiations with Champion to acquire the Champion lands and timber. One of these affiliated interests is Heartwood Forestland Fund III, L.P. (Heartwood), the present fee owner of the 110,000 acres of former Champion lands in New York now subject to the State’s conservation easement. Heartwood is not named as a defendant in either Aubin I or Aubin II.
In November 1998, Champion accepted the Conservation Fund’s offer with respect to the lands and timber in all three States, and a purchase and sale agreement between them setting forth the terms and conditions of the conveyance was executed on December 3, 1998. On December 9, 1998, the State’s intent to acquire fee title to 29,000 acres of Champion lands as part of the Northern Rivers Flow Corridors Project and a conservation easement over 110,000 acres of Champion lands as part of the Working Forestlands Project was announced publicly. On December 16, 1998, the DEC published notice in the State Register and Environmental Notice Bulletin of its intent to acquire the conservation easement.
On December 31, 1998, Champion, the Conservation Fund, and Forestlands applied to the Agency for a permit with regards to the proposed land and easement purchase. Pursuant to Executive Law § 809, the Agency reviewed the applica *342 tion by evaluating the anticipated environmental, economic and social impacts of the acquisition. The Agency determined that the project met the criteria for approval and concluded that the project would not have an “undue adverse impact” on the natural, scenic, aesthetic, ecological, wildlife, historic, recreational or open space resources of the Adirondack Park, taking into account commercial, industrial, residential, recreational or other benefits that might be derived from the project.
The Agency held four public meetings on the purchase project and determined that there was no basis to hold an adjudicatory hearing since the project appeared to be approvable, and there were no factual issues to be determined. The Agency approved the project and issued four separate originals of permit No. 98-313 on June 28, 1999, so that an original could be recorded in each of the four counties involved — said permits were filed on July 1, 1999.
DEC also undertook its own evaluation of the acquisition pursuant to the State Environmental Quality Review Act (SE-QRA) (ECL art 8). On June 29, 1999, the State of New York DEC entered into a purchase and sale contract with the Conservation Fund to acquire both fee and easement interests in the Champion lands in New York. On June 30, 1999, DEC issued a declaration of no significant environmental impact and determined that the significant impacts arising from the acquisition were already addressed in the final generic environmental impact statement already prepared by DEC and that all other site-specific impacts of the acquisition were minor in nature and did not require the preparation of a supplemental environmental impact statement.
On July 1, 1999, the Conservation Fund acquired title to approximately 144,352 acres of former Champion lands within the Adirondack Park and immediately conveyed to the State of New York: (1) fee title to approximately 29,000 acres of former Champion lands, and (2) a conservation easement to approximately 110,000 acres of former Champion lands (easement lands). Simultaneously with the transfer of these interests to the State, the Conservation Fund transferred fee title to the easement lands to Heartwood. As part of the fee transfer to the State, the Conservation Fund reserved the right for a five-year period to lease the fee lands to the current hunting club lessees of these lands. The reserved leasing right includes the remainder of the existing lease terms on the fee lands, and after such leases expire, an exclusive right to oc *343 cupy a one-acre “envelope” around each existing camp, and an easement for ingress and egress to each camp.
On October 28, 1999, the Aubin I plaintiffs filed their summons, notice of petition, and complaint-petition (petition) with a return date of December 17, 1999 bearing index No. 6312-99. On December 16, 1999, the Aubin II plaintiffs filed an amended summons, an amended notice of petition, and an amended complaint-petition bearing the same index number — with a return date of February 11, 2000.
On December 22, 1999, both the Aubin I summons, notice of petition, and complaint-petition and the Aubin II amended summons, amended notice of petition, and amended complaint-petition were served on DEC and Commissioner Cahill, and on the State of New York and the Attorney General. On December 23, 1999, the Aubin I summons, notice of petition and complaint-petition and the Aubin II amended summons, amended notice of petition and amended complaint-petition were served on Real Property Services, Budget, and the State Comptroller. On January 4, 2000, the Aubin I and Aubin II papers were served on the Agency. On January 8, 2000, the Conservation Fund was served with the Aubin I and Aubin II papers. On January 11, 2000, Champion was served with the Aubin I and Aubin II papers. On January 18, 2000, Forestland was served with the Aubin I and Aubin II papers.
Substance of Proceedings/Actions
Before addressing the defendants’ motions to dismiss the complaint-petition and the amended complaint-petition upon grounds of the expiration of the applicable Statute of Limitations, this court will examine the true nature and substance of the complaint-petition and the amended complaint-petition in order to determine the applicable Statute of Limitations. The Court of Appeals has held that a declaratory judgment action is generally not the proper procedural vehicle to challenge an administrative procedure or determination where judicial review by means of a CPLR article 78 proceeding is available (Greystone Mgt. Corp. v Conciliation & Appeals Bd., 62 NY2d 763, 765 [1984]).
The Court of Appeals has stated: “In order to determine the Statute of Limitations applicable to a particular declaratory judgment action, the court must ‘examine the substance of that action to identify the relationship out of which the claim arises and the relief sought’ (Solnick v Whalen, 49 NY2d 224, 229). If the court determines that the underlying dispute can be or *344 could have been resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs the declaratory judgment action (Press v County of Monroe, 50 NY2d 695; Solnick v Whalen, supra, at 230; see, Koerner v State of New York, 62 NY2d 442, 446-447).” (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 202 [1987].)
This court notes that legal counsel for the State defendants have succinctly described the nine causes of action contained within the Aubin I and Aubin II complaints-petitions. This court adopts and incorporates said descriptions from pages 8-11 of the State defendants’ Memorandum of Law dated January 11, 2000, as follows:
The 1st cause of action (Aubin I complaint paras 262-284; Aubin II complaint paras 285-307) challenges the sufficiency of the analyses of the impacts of the acquisition undertaken by DEC pursuant to SEQRA and the Agency pursuant to Executive Law § 809.
The 2nd cause of action (Aubin I complaint paras 285-305; Aubin II complaint paras 308-328) alleges a failure to disclose the terms of the conservation easements to the public before the easements were acquired. The cause of action also alleges DEC’s failure to promulgate regulations pursuant to ECL article 49, title 3 and that the acquisition of the easements harms the tax bases of the Champion Towns in violation of the “home rule” provisions of NY Constitution article IX.
The 3rd cause of action (Aubin I complaint paras 306-322; Aubin II complaint paras 329-345) alleges that the State-owned conservation easements in the Adirondack Park should be construed as being “forest preserve” lands subject to NY Constitution, article XIV, § 1 when acquiring the easement interests in the Champion lands.
The 4th cause of action (Aubin I complaint paras 324-340; Aubin II complaint paras 346-363) alleges that DEC wrongly circumvented the statutory provisions that allow a local municipality to veto a land acquisition project not included in the State’s Open Space Plan because the description of the “Northern Flow Rivers Project” in the Plan is too vague to constitute a proper “project.”
The 5th cause of action (Aubin I complaint paras 341-348; Aubin II complaint paras 364-371) alleges that, in the absence of a “publicly disclosed accounting of all expenses,” the price which the State paid for the acquisition of the fee and ease *345 ment interests in the Champion lands may have exceeded fair market value and therefore may constitute an unconstitutional gift or loan of State funds.
In addition, the 3rd and 5th causes of action (Aubin I complaint paras 320, 321, 343; Aubin II complaint paras 343, 344, 366) allege that the State defendants’ use of third-party intermediaries in the acquisition violated plaintiffs’ rights, NY Constitution, article XIV, § 1 and the provisions of the Eminent Domain Procedure Law.
The 6th cause of action (Aubin I complaint paras 349-365; Aubin II complaint paras 372-388) alleges a failure by the Agency and DEC to analyze the impact of the acquisition on the hunting clubs that have leases on the Champion lands and the resulting “ripple effect” on the local economies.
The 7th cause of action (Aubin I complaint paras 366-377; Aubin II complaint paras 389-400) alleges that the actions of unspecified “defendants” have interfered with the Aubin I and Aubin II plaintiffs’ property and contractual rights, causing the plaintiffs to “incur expenses and costs.”
The 8th cause of action (Aubin I complaint paras 379-382; Aubin II complaint paras 401-405) alleges that the State defendants, operating under an alleged “defective legislative enactment,” have collected, managed and disbursed Environmental Bond Act funds “not in accordance with legislative mandate.”
The 9th cause of action (Aubin I complaint paras 382-386; Aubin II complaint paras 405-409) alleges that the State defendants have acted in excess of their authority and in violation of the Aubin I and Aubin II plaintiffs’ rights.
In the requests for relief in the wherefore clauses of both complaints-petitions, the Aubin I and the Aubin II petitioners seek to void the State’s land acquisition until final determination of their legal issues (Request No. 1); a declaration that the State’s use of third-party intermediaries “to avoid the provisions of the State Constitution” is illegal and improper (Request No. 2); a declaration that DEC’s use of new ad hoc Open Space Plans illegally circumvents the intent of the Environmental Trust Fund Act of 1993 and the Clean Water/Clean Air Bond Act of 1996 (Request No. 3); a declaration that DEC’s purported policies exempting it from SEQRA and the Agency’s failure to fulfill its SEQRA responsibilities are illegal and unlawful (Request No. 4); a declaration that the evaluation of the impacts of the acquisition on the local municipalities and their *346 citizens by DEC and the Agency was improper and inadequate (Request No. 5); a declaration that the acquisition’s purported effect of removing a “substantial portion” of the tax bases of the local municipalities violates the “home rule” and separation of powers provisions of the State Constitution (Request No. 6); a declaration that the State defendants bestowed a gift of public funds in violation of NY Constitution, article VIII, § 1 (Request No. 7); a declaration that the requirements for the expenditure of funds under the Environmental Trust Fund Act of 1993, the Clean Water/Clean Air Bond Act of 1996 and the other statutory requirements were not met (Request No. 8); a declaration that the acquisition of conservation easements pursuant to ECL article 49, title 3 within the Adirondack Park is for the purpose of the “forest preserve” and is limited by NY Constitution, article XIV, § 1 (Request No. 9); and an award of damages in an amount to be determined at trial (Request No. 10).
CPLR 78.03, questions raised, provides in applicable part as follows:
“The only questions that may be raised in a proceeding under this article are:
“1. whether the body or officer failed to perform a duty enjoined upon it by law; or
“2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
“3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.”
This court holds and determines that the 1st, 2nd, 4th, 6th, 8th, and 9th “causes of action” in both Aubin I and Aubin II clearly allege various procedural defects or violations in the administrative process by which the State acquired the fee interest and the easement interests in former Champion lands; therefore, such “causes of action for declaratory judgment” are clearly subject to judicial review as CPLR article 78 proceedings. Although not quite as clear, this court further holds and determines that the plaintiffs’ allegations in the 3rd and 5th causes of action regarding the administrative process by which the State acquired the land and the constitutional violations alleged in the 2nd and 3rd causes of action are or should also be subject to judicial review as CPLR article 78 proceedings (see, Solnick v Whalen, supra).
*347 Applicable Statute of Limitations
The next issue the court will address is whether: (1) the 60-day Statute of Limitations applicable to article 78 proceedings against the respondent Adirondack Park Agency (Executive Law § 818); or (2) the four-month Statute of Limitations applicable to article 78 proceedings generally (CPLR 217); or (3) the six-year Statute of Limitations for CPLR article 30 declaratory judgment actions (CPLR 213 [1]) should be invoked and applied relative to the summons, notice of petition and complaint-petition, and the amended summons, amended notice of petition, and amended complaint-petition filed herein.
CPLR 217 (1) provides in applicable part as follows: “1. Unless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner or the person whom he represents in law or in fact.”
Executive Law § 818 provides in applicable part as follows: “1. Any act, omission, or order of the agency [Adirondack Park Agency] or of any officer or employee thereof, pursuant to or within the scope of this article, may be reviewed at the instance of any aggrieved person in accordance with article seventy-eight of the civil practice law and rules, but application for such review must be made not later than sixty days from the effective date of the order or the date when the act or omission occurred.”
This court holds and determines that the Adirondack Park Agency — which approved the land and easement acquisition project and issued four originals of permit No. 98-313 on June 28, 1999 — was clearly the lead State agency which acted upon the information obtained and administratively approved the State’s fee acquisition of the 29,000 acres of forest lands and the State’s conservation easements over another 110,000 acres of forest lands within the Adirondack Park.
This court holds and determines that a proceeding to challenge the Adirondack Park Agency’s issuance of a permit following review pursuant to Executive Law § 809 must be commenced within 60 days of the date of issuance of such permit (Executive Law § 818 [1]; see, Matter of Hunt Bros. Contrs. v Glennon, 214 AD2d 817, 819 [3d Dept 1995]; see also, Matter of Essex County v Zagata, 91 NY2d 447 [1998]).
CPLR article 78 special proceedings must be commenced within a specified period of time after the determination to be *348 reviewed becomes “ ‘final and binding upon the petitioner’ ” (Matter of Village of Westbury v Department of Transp., 75 NY2d 62, 72 [1989]). An administrative determination becomes final and binding when the petitioner is given notice of the determination (see, Matter of Biondo v New York State Bd. of Parole, 60 NY2d 832 [1983]). This court holds and determines that the administrative action became final and' binding upon the plaintiffs-petitioners upon the recording of permit No. 98-313 in the County Clerk’s office in all four affected counties on July 1, 1999.
This court holds and determines that all of the article 78 causes of action should be governed by the 60-day Statute of Limitations created by Executive Law § 818 because the Adirondack Park Agency was clearly the lead State agency in the administrative approval of this land acquisition. Although other State agencies such as DEC were involved in the administrative process, the final administrative determination to issue permit No. 98-313 on June 28, 1999 was made by the Adirondack Park Agency; therefore, this court holds and determines that the 60-day Statute of Limitations should apply. Accordingly, this court holds and determines that the article 78 causes of action asserted in the Aubin I and Aubin II complaints-petitions filed on October 28, 1999, and on December 16, 1999, should be and the same are hereby dismis'séd as against all respondents as untimely — they were commenced far beyond the expiration of the applicable 60-day Statute of Limitations on August 30, 1999. No court shall extend the time limited by law for the commencement of an action (CPLR 201).
Personal Jurisdiction Over Respondents
CPLR.306-b provides in applicable part as follows: “Service of the summons and complaint, summons with notice, or of the third-party summons and complaint shall be made within one hundred twenty days after their filing, provided that in an action or proceeding where the applicable statute of limitations is four months or less, service shall be made not later than fifteen days after the date on which the applicable statute of limitations expires. If service is not made upon a defendant within the time provided in this section, the court, upon motion, shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in the interest of justice, extend the time for service” (emphasis supplied).
Assuming arguendo that a four-month Statute of Limitations may apply to the other State respondents and/or to the *349 private respondents as necessary parties, this court further holds and determines that the plaintiffs have failed to obtain personal jurisdiction over any of the State respondents or private respondents by failing to serve any of the State respondents or private respondents for at least 52 days after November 1, 1999 — the date upon which the four-month Statute of Limitations in CPLR 217 (1) expired. Accordingly, this court holds and determines that all of the article 78 causes of action contained in both Aubin I and Aubin II should be and the same are hereby dismissed in their entirety as against all respondents for failure to timely serve any of the respondents named therein within 15 days after the date on which the applicable Statute of Limitations expired.
Petitioners’ counsel have created a procedural mess by commencing the proceeding with incorrect petitioners and then filing an amended complaint-petition with additional petitioners under the same index number before ever serving the first complaint-petition. Even if this court were to grant petitioners’ cross motion for an order that the amended complaint-petition (Aubin II) be determined nunc pro tunc to relate back to the October 28, 1999 filing date of the original complaint-petition (a dubious proposition; see, Matter of Gershel v Porr, 89 NY2d 327 [1996]), the fact still remains that the State respondents were not served until between 52 to 65 days after November 1, 1999 — the date upon which the four-month Statute of Limitations expired — and all respondents were not served until 79 days after November 1, 1999. Apparently relying upon their contention that they have 120 days after filing to serve the respondents, the petitioners have not made a cross motion pursuant to CPLR 306-b for an order “upon good cause shown or in the interest of justice” to extend the time for service. However, this court notes that any such application made in response to the State respondents’ motion to dismiss would be extremely untimely, and this court upon considering the length of the delay would be hard pressed to find sufficient reason or excuse constituting good cause for untimely service upon the State of New York — a respondent that is fairly easy to locate and serve. Furthermore, with a $24.9 million land conservation deal hanging in the balance, the extent of prejudice to the respondents would be enormous (see, e.g., Tewari v Tsoutsouras, 75 NY2d 1, 12 [1989]). Additionally, in viewing the potential merit of the petitioners’ various causes of action, this court would be hard pressed to find any reason to grant the petitioners any additional time in the interests of justice.
*350 Seventh Cause of Action: Aubin I and Aubin II
Petitioners’ seventh cause of action alleges that the respondents have interfered with the petitioners-plaintiffs’ property and contractual rights causing the petitioners to “incur expenses and costs.” While it is possible to receive money from the State as a result of an article 78 proceeding where money damages are only incidental to the main relief requested, this court holds and determines that following this court’s dismissal of all of the petitioners-plaintiffs’ article 78 causes of action, any such exception does not apply here. The State has consented to be sued on monetary claims only in the Court of Claims; therefore, this court clearly lacks subject matter jurisdiction over the seventh cause of action (Morell v Balasubramanian, 70 NY2d 297 [1987]). Accordingly, this court holds and determines that the seventh cause of action in Aubin I and Aubin II should be and the same is hereby dismissed.
Conclusion
This court holds and determines that the Aubin I petition-complaint and the Aubin II amended petition-complaint should be and the same are hereby dismissed in their entirety, and the relief requested therein in all respects denied.
It is adjudged that both the petition-complaint and the amended petition-complaint are dismissed.