OPINION OF THE COURT
Phillip R. Rumsey, J.
Petitioner proposes to develop a project in the Towns of Cortlandville, Homer, Solon and Truxton in Cortland County, to generate electricity from wind, which it identifies as the Crown City Wind Energy Project (the project). The project is believed to be the largest ever proposed for Cortland County and includes construction of 44 wind turbines that are 492 feet tall, over 20 miles of access roads, 30 miles of buried high-voltage electric transmission lines and one-half mile of overhead electric transmission lines. Approximately 56 acres of land would be permanently occupied by the project. It would also have significant temporary impacts during the anticipated nine-month construction phase; for example, the existing public roads leading to the project site are not adequate to permit transportation of the necessary components — expected to require more than 21,000 loaded truck trips — requiring widening of six road intersections and reinforcement of three culverts or bridges.
Petitioner first identified the opportunity to develop the project in 2007. It commenced the State Environmental Quality Review Act (SEQRA) process by submitting an environmental assessment form (EAF) to respondent in November 2008, which declared itself lead agency on December 18, 2008. As lead agency, respondent has acted through its County Legislature which, in turn, has referred matters to its Agriculture, Planning and Environment Committee for consideration prior to action. Petitioner represents that the project is financially viable only if it obtains a renewable energy credit (REC) contract from the New York State Energy Research and Development Agency (NYSERDA) which, in turn, requires that the project achieve commercial operation — i.e., sale of electricity — by the end of 2015. To connect to New York’s high-voltage electricity transmission network, petitioner must obtain a permit from the New York Independent System Operator (NYISO). Petitioner filed an interconnection application with NYISO in November 2008 and undertook the required feasibility study and system reliability impact study (SRIS) at a' cost exceeding $200,000. NYISO ac *236 cepted the SRIS on October 7, 2010. NYISO’s tariff requires that an applicant notify NYISO, within two years from acceptance of the SRIS, that it has received from the lead agency conducting SEQRA review a determination that a draft environmental impact statement (DEIS) is adequate (notification of NYISO that the lead agency has determined that the DEIS is adequate is referred to by petitioner as a regulatory milestone).[1] An interconnection application is deemed withdrawn upon a failure to meet the regulatory milestone. In this case, petitioner’s failure to meet the regulatory milestone will prevent it from achieving commercial operation by the end of 2015 as required to obtain the REC from NYSERDA.
Petitioner claims that respondent agreed in June 2009 that scoping would not be required. Respondent denies that it ever agreed to forgo scoping, and notes that the Public Service Commission reviewed the EAF and recommended a full public scoping process (see aff of Kathie Arnold, sworn to Dec. 3, 2012 [Arnold aff] ¶ 8, exhibit D). Petitioner had little contact with respondent or its representatives regarding SEQRA from 2009 until April 2012 (see aff of Patrick M. Snyder, sworn to Dec. 3, 2012 [Snyder aff] ¶ 9; aff of Brett O’Connor, sworn to Nov. 20, 2012 [O’Connor aff] ¶¶ 32, 40, 44). Petitioner alleges that it began meeting with county officials, beginning in April 2012, to discuss the procedure for obtaining the necessary approvals. In May 2012, petitioner engaged “edr Companies” to complete the DEIS on its behalf. On May 30, 2012, respondent determined that scoping would be required. Petitioner agreed to submit a draft scoping document, which was submitted to the Agriculture, Planning and Environment Committee on July 3, 2012. A final scope was adopted by the legislature on September 13, 2012. On September 17, 2012, petitioner submitted a proposed DEIS comprised of four volumes of material.
By letter dated October 11, 2012 (see petition, exhibit 4), NYISO formally notified petitioner that its interconnection application had been deemed withdrawn for failure to meet the regulatory milestone and advised that it had a 15-business-day grace period to cure the deficiency, which would expire on November 1, 2012. Petitioner requested action on the proposed DEIS prior to expiration of the grace period, inasmuch as a determination of adequacy within that time frame would permit it *237 to satisfy the regulatory milestone. At a special meeting held on October 30, 2012, the legislature — by a vote of 17-2 — adopted Resolution No. 342-12 determining that the DEIS was incomplete.
On November 1, 2012, petitioner applied to the Federal Energy Regulatory Commission (FERC) seeking a 45-day extension of the regulatory milestone. If granted, the waiver application would extend petitioner’s deadline for meeting the regulatory milestone through December 16, 2012.[2] Petitioner submitted revisions to the DEIS to respondent and, by letter received by respondent on November 16, 2012, requested a determination of adequacy for public review of the DEIS as supplemented by its revisions. Under applicable SEQRA guidelines, respondent is required to make a determination on petitioner’s resubmission by December 16, 2012 — the same day that the extended regulatory milestone will expire if the waiver application is granted.
Petitioner commenced this proceeding on November 21, 2012 seeking a judgment annulling the legislature’s resolution of October 30, 2012 that declared the DEIS to be incomplete (Resolution No. 342-12) and a declaration that the DEIS is adequate for public review under SEQRA. Petitioner asserts that further resort to administrative procedure would be futile and, furthermore, that it would be irreparably harmed if an adequacy determination is not made prior to December 16, 2012, because failure to satisfy the regulatory milestone means that it would be unable to meet the requirements necessary to obtain the REC, which is necessary for the project to be financially viable.
The first question presented is whether the issues presented in this proceeding are ripe for review, which depends upon several considerations.
“First, the action must ‘impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process’ (Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998], quoting Chicago & S. Air Lines v Waterman S.S. Corp., 333 US 103, 113 [1948]). In other words, ‘ “a pragmatic evaluation [must be made] of whether the ‘decisionmaker has arrived at a definitive posi *238 tion on the issue that inflicts an actual, concrete injury’ ” ’ (Essex County, 91 NY2d at 453 [citations omitted]). Further, there must be a finding that the apparent harm inflicted by the action ‘may not be “prevented or significantly ameliorated by further administrative action or by steps available to the complaining party” ’ (Essex County, 91 NY2d at 453 [citations omitted]).” (Matter of Gordon v Rush, 100 NY2d 236, 242 [2003] [footnote omitted].)
Under the foregoing standards, a decision to reject an applicant’s proposed DEIS as inadequate is an interim ruling that is not ripe for review until the decision making process is completed (see Matter of Sour Mtn. Realty v New York State Dept. of Envtl. Conservation, 260 AD2d 920, 923 [1999], lv denied 93 NY2d 815 [1999]; Hell’s Kitchen Neighborhood Assn. v New York City Dept. of City Planning, 6 Misc 3d 1031[A], 2004 NY Slip Op 51849[U] [2004]; see also J. Kevin Healy & Philip E. Karmel, Environmental Law and Regulation in New York § 4:38 [2d ed 9 West’s NY Prac Series]; 2 Gerrard, Ruzow and Weinberg, Environmental Impact Review in New York § 7.02 [1] at 7-12 — 7-13 [2009]).[3] A determination that a DEIS is inadequate occurs at an early stage of SEQRA review and the applicable regulations contain a specific procedure to permit an applicant to remedy any deficiencies noted by the lead agency. In that regard, upon a determination that a DEIS is inadequate, the lead agency must provide the applicant with a written statement of the deficiencies (see 6 NYCRR 617.9 [a] [2] [i]). The applicant may elect to submit revisions to remedy the deficiencies and the lead agency must determine whether to accept a revised DEIS within 30 days after it receives any revisions (see 6 NYCRR 617.9 [a] [2] [ii]; see also New York State Department of Environmental Conservation, SEQR Handbook at 132 [3d ed *239 2010]).[4] Although it is recommended that a lead agency attempt to provide sufficient guidance to enable an applicant to develop an acceptable DEIS with one revision effort, there is no limit on either the number of times that a lead agency may reject a submitted DEIS or that an applicant may submit revisions (see SEQR Handbook at 132).
For this large-scale project, respondent has substantially complied with applicable procedural deadlines.[5] The DEIS was submitted on September 17, 2012 and the County Legislature determined that it was inadequate at a special meeting held on October 30, 2012 — 43 days after the four-volume proposed DEIS was submitted. The resolution identifies a written document provided to petitioner by the Agriculture, Planning and Environment Committee on October 11, 2012 (see Arnold aff, exhibit E) as a basis for finding the DEIS to be inadequate. Respondent also provided petitioner with a list of inadequacies dated October 30, 2012 (id., exhibit F). Petitioner has responded to the deficiencies by letter dated November 15, 2012, “formally submit [ting] responses to the outstanding areas of purported inadequacy with regard to the DEIS” and asking that it be considered as petitioner’s “resubmission of its DEIS under SEQRA and the basis of a determination of adequacy for public review” (see O’Connor aff, exhibit 12 at 1, 4; see also petition 1i 68). The letter was apparently received by respondent on November 16, 2012 (see Snyder aff ¶ 26), requiring a response from respondent within 30 days, i.e., by December 16, 2012. In other words, respondent has so far followed the procedure mandated by SEQRA and currently has pending before it petitioner’s application for determination of the adequacy of the revised DEIS which, if granted, will render the disputed issue academic (see e.g. Matter of Guido v Town of Ulster Town Bd., 74 AD3d 1536 [2010]; Matter of Demers v New York State Dept. of Envtl. Conservation, 3 AD3d 744 [2004]). The extraordinary relief sought by petitioner — a judgment from this court that the *240 initially proposed DEIS is adequate, while its application for approval of the revised DEIS is pending — compels but one conclusion: that the dispute as to whether the initially proposed DEIS is adequate is not an issue that is ripe for judicial consideration.
Petitioner’s contention that the issues presented in this proceeding are ripe for review because continued resort to administrative remedies would be futile or cause irreparable harm is unavailing. Petitioner argues that respondent has “no intention of rendering an adequacy determination within the 30 days that it is relying on to defeat this Petition” (reply affirmation of Kevin M. Bernstein dated Dec. 6, 2012 ¶ 7) and, further, that respondent’s lack of good faith is further evidenced by the County Legislature’s disregard for the applicable law and the advice of its own experts. As previously noted, there has been no delay to date by respondent. Rather, petitioner largely created its own dilemma by failing to timely initiate the SEQRA review process. By its own admission, petitioner first participated in a series of discussions with respondent to devise a procedure for obtaining necessary approvals for the project beginning in April of this year — six months prior to the regulatory milestone deadline — and did not retain a consultant to prepare the DEIS until May 2012 (see O’Connor aff ¶ 40). Petitioner concedes that it should have started the SEQRA process sooner so that respondent would have sufficient time for review prior to the date when petitioner desired an adequacy determination to satisfy the regulatory milestone (see Arnold aff ¶ 7 [e]). Moreover, when the SEQRA process began in earnest, respondent acted promptly to retain the services of special legal counsel and an environmental consultant and since that time has substantially complied with all SEQRA deadlines; there is no evidence of any delay to date that may be attributed to respondent (see e.g. Matter of East Clinton Developers v Town of Clinton, 88 AD2d 416 [1982] [SVa-month period between submission of proposed DEIS and its ultimate rejection was not unreasonable as a matter of law (decided prior to the amendment of SEQRA requiring that an adequacy determination be made within 45 days from submission of the initial proposed DEIS)]; Missere v Gross, 826 F Supp 2d 542, 554-555 [SD NY 2011] [a two-year delay in acting on applications seeking a zoning variance was insufficient to establish the futility exception for ripeness of a federal due process claim]; cf. Honess 52 Corp. v Town of Fishkill, 1 F Supp 2d 294, 300-301 [SD NY 1998] [town’s actions over a 10-year period from the time that the first application for *241 a residential subdivision was submitted in 1987 demonstrated that no approval would be forthcoming before applicant’s rights expired under a prior 1977 agreement with the town regarding permitted density]).
Respondent denies that it is not acting in good faith (see Snyder aff ¶¶ 22, 25, 30; Arnold aff ¶¶ 7, 16-20); however, even if petitioner’s allegations that respondent is not acting in good faith — or that certain county legislators are opposed to the project and will never vote for approval — were proved, they are likewise insufficient to establish futility (see e.g. Homefront Org., Inc. v Motz, 570 F Supp 2d 398 [ED NY 2008] [allegations of open hostility by various board members, including specific statements to the effect that the proposed project would never be approved, were insufficient to invoke the futility exception for ripeness of a federal due process claim]).
Finally, with respect to its claim that it will be irreparably harmed if the requested relief is not granted, it again bears noting that petitioner largely created the very dilemma it now faces by failing to communicate with respondent regarding SEQRA for over two years — from 2009 until April 2012 (see Snyder aff ¶ 9; O’Connor aff ¶¶ 32, 40) — and beginning the process in earnest for a large-scale project potentially having significant environmental impacts only six months before expiration of a deadline of which it had been aware for two years. Nor has petitioner established that the issues presented in this proceeding are ripe for review because it will suffer irreparable harm. This concern remains speculative because respondent may yet take action in a timely manner on petitioner’s pending application and determine that the revised DEIS is adequate, allowing petitioner to meet the regulatory milestone, if it is extended.[6] Moreover, petitioner has cited no authority which supports its *242 argument that the court may intervene in an ongoing administrative procedure — in which an application is pending — to substitute its judgment for that of the lead agency and to order relief that petitioner alleges may be necessary to meet a deadline that is not within the parties’ control, that is not imposed by the lead agency or the administrative procedure, and that does not relate to the subject under review, i.e., review of the project’s potential local environmental impacts.
Based on the foregoing, the petition must be, and hereby is, dismissed.

. Inasmuch as October 7 was a Sunday in 2012 and October 8 was the Columbus Day holiday, the regulatory milestone deadline was extended to October 9, 2012.

. Petitioner notes that it is unlikely that FERC will render a decision on the waiver application prior to expiration of the December 16, 2012 waiver period (see petition ¶ 64).

. By contrast, a positive declaration — which is an interim determination that a proposed project may result in one or more large environmental impacts that require preparation of a DEIS — may be ripe for review because an erroneous positive declaration imposes an actual injury on an applicant by requiring an applicant to prepare a DEIS that is not necessary, a process that may involve considerable time and expense that cannot be recovered even if the applicant ultimately obtains the requested relief (see Gordon, 100 NY2d at 242; Matter of Delvecchio v City of Cortland Planning Commn., 18 Misc 3d 1120[A], 2007 NY Slip Op 52520[U] [2007]). A determination that a DEIS is inadequate imposes much less proportionate burden on an applicant, only requiring that it address purported deficiencies in a DEIS that has already been determined to be necessary and which has already been prepared.

. The SEQR Handbook is published by the New York State Department of Environmental Conservation and is available at http://www.dec.ny.gov/docs/ permits_ej_operationsjpdfyseqrhandbook.pdf (last accessed Dec. 14, 2012).

. On May 30, 2012, respondent required scoping of the DEIS. A draft scope was presented on July 3, 2012. The final scope was adopted on September 13, 2012, 72 days after the draft scope was presented. In light of respondent’s failure to issue the final scope within 60 days after submission of the draft scope, petitioner could have elected to prepare and submit a DEIS consistent with the draft scope (see 6 NYCRR 617.8 [i]; SEQR Handbook at 158). However, it waived respondent’s minor noncompliance by agreeing to comply with the completed final scope (see petition ¶ 34).

. Moreover, “[w]here, as here, the harm sought to be enjoined is contingent upon events which may not come to pass, the claim ... is nonjusticiable as wholly speculative and abstract” (Matter of Wal-Mart Stores v Campbell, 238 AD2d 831, 833 [1997] [internal quotation marks and citation omitted]; see also New York Pub. Interest Research Group v Carey, 42 NY2d 527, 531-532 [1977] [a request for declaratory judgment is premature if it is based upon the happening of a future event that is beyond the control of the parties and may never occur]). FERC’s action on petitioner’s application for a waiver that will extend the regulatory milestone deadline is a future contingency that is not within the parties’ control. If the waiver is denied, any determination that the court might make in this proceeding would be merely advisory because it would have no effect on petitioner’s ability to meet the existing November 1, 2012 deadline. In other words, if the waiver application *242 is denied, judgment awarding petitioner the relief requested in this proceeding would not correct its failure to have obtained an adequacy determination by November 1, 2012.