[998 NYS2d 68]

In the Matter of RANCO SAND AND STONE CORP., Appellant, v
PATRICK VECCHIO et al., Respondents.

Second Department, November 26, 2014

---

**APPEARANCES OF COUNSEL**

*Leonard J. Shore*, Commack, for appellant.

*Devitt Spellman Barrett, LLP*, Smithtown (*John M. Denby* and *David H. Arntsen* of counsel), for respondents.

**OPINION OF THE COURT**

DICKERSON, J.P.

Introduction

The petitioner, Ranco Sand and Stone Corp. (hereinafter Ranco), owns a parcel of real property in Kings Park. The subject parcel has been leased to third parties for use primarily as a bus yard and trucking station. In 2002, Ranco filed an application with the Town of Smithtown to rezone the subject parcel to change its zoning designation from residential to heavy industrial. Several years later, the respondents Patrick Vecchio, Thomas J. McCarthy, Edward Wehrheim, Patricia Biancaneillo, and Robert J. Creighton, constituting the Town Board of the Town of Smithtown (hereinafter the Town Board), upon determining that the proposed zoning change may have a significant effect on the environment, issued a positive declaration pursuant to the State Environmental Quality Review Act (ECL art 8; hereinafter SEQRA), requiring Ranco to prepare and circulate a draft environmental impact statement (hereinafter DEIS). Ranco commenced this proceeding pursuant to CPLR article 78 against the Town and the members of the Town Board (hereinafter collectively the respondents) seeking to annul the Town Board's determination approving a resolution issuing a SEQRA positive declaration on the ground that the approval of the resolution was arbitrary and capricious.

On this appeal, we address whether, under the particular circumstances of this case, the issuance of a SEQRA positive declaration constitutes a matter ripe for judicial review, or merely a preliminary step in the decision-making process. Upon considering all of the relevant factors and circumstances, we conclude that the matter, at this stage, does not give rise to a justiciable controversy ripe for review.

Factual and Procedural Background

Ranco is a domestic corporation, with its principal place of business in the County of Suffolk. Peter J. Horan was the sole owner of Ranco until his death in 1998. Upon Horan's death, and at all times since, Ranco has been owned by Marilyn A. Horan, Peter J. Horan's widow, as majority owner, and by Matthew Metz as minority owner.

Ranco owns a 2.16-acre parcel of real property (hereinafter the subject parcel) located at 154 Old Northport Road, Kings Park, in the County of Suffolk. Ranco acquired title to the subject parcel by deed dated December 29, 1992. Ranco leased the subject parcel to third parties, and the parcel was developed and utilized as a bus yard and trucking station with administrative offices and a single-family residence built more than 60 years ago, which is used by a security guard. Ranco itself does not occupy any portion of the subject parcel.

In 2002, Ranco filed an application with the Town to rezone the subject parcel to amend its zoning designation from R-43 (residential) to HI (heavy industrial). A hearing on the application was held on November 6, 2002. On March 17, 2004, the Planning Board of the Town of Smithtown (hereinafter the Planning Board) voted to recommend the approval of Ranco's application for rezoning.

No further action on the application was taken for more than five years, until August 11, 2009, at which time the Town Board adopted a resolution issuing a positive declaration pursuant to SEQRA, upon concluding that the proposed rezoning of the subject parcel "may have a significant effect on the environment and that preparation of a draft environmental impact statement will be required." Among the stated reasons for requiring this level of environmental review was that the proposed use of the subject parcel would be incompatible with existing residential land uses in the vicinity.

By notice of petition and verified petition dated December 3, 2009, Ranco commenced this proceeding pursuant to CPLR

article 78, seeking to annul the Town Board's determination approving the resolution issuing a SEQRA positive declaration, which required Ranco to prepare and circulate a DEIS, on the ground that the determination was arbitrary and capricious. Ranco also sought relief in the nature of mandamus, directing the Town to process the application for rezoning in the absence of the DEIS.

In support of its petition, Ranco relied on the fact that an adjacent 3.36-acre parcel at 152 Old Northport Road (hereinafter the adjacent parcel) had been rezoned after litigation from residential to heavy industrial without any formal environmental review. The adjacent parcel was owned by the Peter J. Horan Trust, of which Marilyn A. Horan was the sole beneficiary. Setting forth the events that resulted in the rezoning of that property, the petition alleged that, in 1987, Peter J. Horan had submitted an application to the Town Board to rezone the adjacent parcel from R-21 and R-43 to HI. Following public hearings, the Town Board denied the application on May 3, 1988, but the Town Board did not issue a SEQRA positive declaration prior to its denial of the rezoning application. Thereafter, Peter Horan commenced a declaratory judgment action (hereinafter the prior action) against, among others, the Town, challenging the denial of the rezoning application for the adjacent parcel. In an order dated April 5, 1991, the Supreme Court, Suffolk County (Floyd, J.), denied the Town's motion for summary judgment dismissing the complaint, and this Court affirmed that order (see Horan v Town of Smithtown, 194 AD2d 714 [1993]).

Shortly after Peter J. Horan's death, a motion was made in the prior action to amend the caption to substitute Marilyn A. Horan, as the executor of the estate of Peter J. Horan, and to amend the complaint. In an order dated December 23, 1999, the Supreme Court granted that relief, noting that, according to the parties' representations, notwithstanding the residential zoning designation of the adjacent parcel, it had, in fact, been used for light and heavy industrial purposes. Prior to issuing its order, with the consent of both parties and counsel, the Justice presiding over the proceeding visited the adjacent parcel in May 1999. In the order dated December 23, 1999, the court drew on the observations it had made during its visit when it stated, in part,

> "the ineluctable conclusion seems to be that the Town of Smithtown has been inexcusably lax in the enforcement of its zoning ordinance over the past

ten years, or has permitted a de facto change in the nature of the area without enacting the necessary legislation to make the on-going activities legal.

"On the face of what the undersigned has observed to date, the Town of Smithtown should have taken some remedial action long ago: either enforcement of zoning restrictions, or reasonable modification of its zoning ordinance.

"Indeed, the major environmental effects that have resulted from the heavy industrial and light industrial uses and mining operations . . . in the residentially zoned area have been permitted to go on and increase under the watch of the Town of Smithtown, apparently without any formal environmental assessment of the impact. To allow the situation to continue merely to allow the Town of Smithtown to pass on the cost of environmental review to another party is not a persuasive reason to deny relief to the plaintiff that may be warranted by the current facts and circumstances."

Following the issuance of that order, the parties entered into a stipulation of settlement, pursuant to which the adjacent parcel was redesignated as heavy industrial. The Town stipulated that the adjacent parcel "will be used for HI permitted uses and certain light industrial ('LI') type uses as may be permitted as per Town Code." At the time, it was requested that the stipulation address the subject parcel as well as the adjacent parcel, but the Town Attorney denied that request. Ranco emphasizes here that no formal environmental review was undertaken in connection with the zoning application to rezone the adjacent parcel or as part of the settlement of the prior action.

Since Ranco acquired the subject parcel, that parcel and the adjacent parcel have been utilized as if they were a single parcel. The primary tenant occupying the majority of both parcels, who rents through a single lease, is a school-bus company that employs the parcels for parking and repair of school buses, as well as for administrative offices and employee parking. The residential structure on the subject parcel is used by a security guard. The bus company has been a tenant since at least 1997, and was the tenant at the time of the Supreme Court Justice's visit to the property in 1999, as well as at the time that the parties entered into the stipulation of settlement in the prior ac-

tion. Thus, Ranco contends that the observations made by the Supreme Court in its December 1999 order based on the site visit are as relevant to the subject parcel today as they were to the adjacent parcel in connection with the prior action.

Ranco argued before the Supreme Court that, other than the structure employed by the security guard, there are no structures used for residential purposes within a half-mile radius of the subject parcel. Ranco maintained that the current uses on both parcels comply with the provisions governing heavy industrial uses in the Town. Ranco further noted that the current shared uses on both parcels are not uses permitted as of right in any other zoning category described in the Town of Smithtown Building Zone Ordinance. Moreover, Ranco explained that it has never received any notices of violations for its use of the subject parcel.

In its petition, Ranco asserted that the facts before the Town Board did not support its determination, and that the Town Board's determination was arbitrary and capricious, unlawful, illegal, and unwarranted. Ranco repeatedly emphasized that it was not seeking to change the manner in which the subject parcel was used, but merely to change the zoning classification to comport with the actual nature of the decades-long uses of the subject parcel. Indeed, as Ranco observed, the resolution acknowledged that the subject parcel was, at the time, "used for certain heavy industrial purposes." In this regard, Ranco relied on the Supreme Court's observations in the prior action, set forth above, in which it concluded that the adjacent parcel was used for heavy industrial purposes, and that the Town had been lax in enforcing its zoning designations.

Ranco further maintained that, based on the doctrine of res judicata, the Supreme Court's decision in the prior action barred the Town from requiring a full environmental review of the subject parcel here. Ranco further asserted that the requirement that it prepare a DEIS would cause it injury, in that it would be forced to expend substantial sums of money to retain experts to prepare the DEIS, and to pay the Town to review it. Ranco asserted that, based on the fact that the subject parcel and the adjacent parcel had been used for heavy industrial purposes for some time, with the Town's knowledge, and the fact that the Town did not require environmental review in connection with the prior action concerning the adjacent parcel, there was no basis for the Town Board to have adopted the positive declaration here, requiring full environmental review in

connection with the subject parcel. Ranco asserted that the SEQRA positive declaration was "improper and contrary to law," inasmuch as preparation of the DEIS would not provide any new or relevant information with regard to its application to rezone the subject parcel. Accordingly, Ranco asserted that the Town Board's issuance of the positive declaration, and the concomitant requirement that Ranco prepare a DEIS, were arbitrary and capricious.

The respondents moved to dismiss the petition on the ground that the matter was not yet ripe for judicial review. The respondents contended that the Town Board's issuance of a positive declaration did not constitute the final action that it would take on the matter. Additionally, the respondents asserted that the prior action had no preclusive effect as to the determination to be made here, in light of the procedural course of the prior action, culminating in a settlement agreement that became an order of the court, and because collateral estoppel may not be invoked to estop a governmental agency from carrying out its statutory duty.

The respondents distinguished the subject parcel from the adjacent parcel, noting that the subject parcel was approximately 400 feet from a residential area, suggesting that restrictions may be necessary to avoid negative environmental impacts on the nearby residences.

In their motion, the respondents emphasized their reasons for issuing the positive declaration, including that the proposed change would be inconsistent with the planned use of the subject parcel and with the Town's Comprehensive Master Plan, that the proposed use appeared to be incompatible with existing residential land uses in the vicinity, and that the development of the subject parcel as proposed by Ranco had the potential to result in increased environmental impacts on the neighboring residentially developed properties and on the Sunken Meadow Parkway corridor. In this regard, the respondent submitted a copy of a memorandum prepared by Frank DeRubeis, Director of the Planning and Community Development Department for the Town, concerning the proposed rezoning of the subject parcel. The memorandum acknowledged that several properties in the vicinity "house activities that are not permitted in their present zoning category." However, DeRubeis noted that, while the subject parcel had "been used for some heavy industry purposes in violation of the zoning, these uses have tended to be of the less intense type of HI use." According to DeRubeis,

rezoning could result in more intense industrial use on the site. The memorandum noted that the subject parcel "is at the fringe of the industrial area, about 400 feet from residential uses." According to DeRubeis, these nearby residences were close enough to the subject parcel that they could "be affected by noise, odors, vibration, air pollution, glare and other visual impacts, and traffic generation." With regard to Ranco's intention to maintain the existing single-family residence on the site, DeRubeis stated that single-family residences are not permitted in HI zones. DeRubeis observed that the recommendation of the Town Planning Department was that the Planning Board grant the application with a number of conditions.

In conclusion, the respondents asserted that the actions of the Town Board in issuing the positive declaration did not constitute a final agency determination, and inflicted no immediate, concrete harm on Ranco. Accordingly, the respondents argued that the petition must be dismissed. Alternatively, the respondents asserted that the SEQRA positive declaration was not arbitrary and capricious.

The Order and Judgment Appealed From

In an order and judgment (one paper) dated November 29, 2011, the Supreme Court granted the respondents' motion and dismissed the proceeding, upon concluding that the matter was not ripe for judicial review. According to the Supreme Court, under the circumstances of this case, the Town Board's issuance of a SEQRA positive declaration and the imposition of the requirement that Ranco prepare and circulate a DEIS did not give rise to a justiciable controversy.

Analysis

> "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties' " (*National Park Hospitality Assn. v Department of Interior*, 538 US 803, 807-808 [2003], quoting *Abbott Laboratories v Gardner*, 387 US 136, 148-149 [1967]).

"To determine whether a matter is ripe for judicial review, it is necessary first to determine whether the issues tendered are ap-

propriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied" (*Matter of Town of Riverhead v Central Pine Barrens Joint Planning & Policy Commn.*, 71 AD3d 679, 681 [2010] [internal quotation marks omitted]; *see Toilet Goods Assn., Inc. v Gardner*, 387 US 158, 162 [1967]; *Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 519 [1986]).

A court considering review of an agency determination

"must determine whether an agency has arrived at a definitive position on the issue that inflicts an actual concrete injury and whether the resolution of the dispute requires any fact-finding, for '[e]ven if an administrative action is final, however, it will still be "inappropriate" for judicial review and, hence, unripe, if the determination of the legal controversy involves the resolution of factual issues' " (*Matter of Town of Riverhead v Central Pine Barrens Joint Planning & Policy Commn.*, 71 AD3d at 681, quoting *Church of St. Paul & St. Andrew v Barwick*, 67 NY2d at 519; *see Matter of Patel v Board of Trustees of Inc. Vil. of Muttontown*, 115 AD3d 862 [2014]).

"The position taken by an agency is not definitive and the injury is not actual or concrete if the injury purportedly inflicted by the agency could be prevented, significantly ameliorated, or rendered moot by further administrative action or by steps available to the complaining party" (*Matter of Patel v Board of Trustees of Inc. Vil. of Muttontown*, 115 AD3d at 864; *see Stop-The-Barge v Cahill*, 1 NY3d 218, 223 [2003]; *Matter of Essex County v Zagata*, 91 NY2d 447, 453-454 [1998]).

"The basic purpose of [SEQRA] is to incorporate the consideration of environmental factors into the existing planning, review and decision-making processes of state, regional and local government agencies at the earliest possible time. To accomplish this goal, [SEQRA] requires that all agencies determine whether the actions they directly undertake, fund or approve may have a significant impact on the environment, and, if it is determined that the action may have a significant adverse impact, prepare or request an environmental impact statement" (6 NYCRR 617.1 [c]; *see Matter of Chase Partners, LLC v Incorporated Vil. of Rockville Ctr.*, 43 AD3d 1049, 1052 [2007]).

Actions falling within the purview of SEQRA include, among others, "projects or physical activities, such as construction or other activities that may affect the environment by changing the use, appearance or condition of any natural resource or structure, that . . . require one or more new or modified approvals from an agency or agencies" (6 NYCRR 617.2 [b] [1] [iii]).

"An action taken by an agency pursuant to SEQRA may be challenged only when such action is final" (*Matter of Patel v Board of Trustees of Inc. Vil. of Muttontown*, 115 AD3d at 864; *see* CPLR 7801 [1]). Traditionally, a "SEQRA determination [has] usually [been] considered to be a preliminary step in the decision-making process and, therefore, . . . not ripe for judicial review until the decision-making process has been completed" (*Matter of Young v Board of Trustees of Vil. of Blasdell*, 221 AD2d 975, 977 [1995], *affd* 89 NY2d 846 [1996]).

In *Matter of Gordon v Rush* (100 NY2d 236 [2003]), the Court of Appeals recognized that there may be circumstances in which the issuance of a positive declaration requiring property owners to prepare and submit a DEIS itself inflicts actual injury and constitutes a final administrative action ripe for judicial review. In *Rush*, the petitioners were a group of oceanfront property owners in the Town of Southampton. After storms in the winter of 1992-1993 caused substantial erosion to the beaches, the petitioners sought to install steel bulkheads to prevent further erosion. The petitioners submitted applications seeking permits to install the bulkheads to both the Town of Southampton Coastal Erosion Hazard Board of Review (hereinafter the Southampton Board) and the New York State Department of Environmental Conservation (hereinafter the DEC). At the request of the Town of Southampton, the DEC agreed to serve as lead agency for coordinated SEQRA review purposes, and in August 1993 it issued a negative declaration finding that no DEIS was warranted because the installation of the bulkheads would not have a significant impact on the environment (*see id.* at 241). However, after an amendment was made to the application for permits, based on modification of the proposal, the application was denied by a town official as violative of the Code of the Town of Southampton (*see id.*). On the petitioners' administrative appeal from the denial, the Southampton Board issued a resolution in February 1994 stating that it would assume jurisdiction to conduct de novo SEQRA review, and would designate a lead agency (*see id.*). Thereafter, following the com-

mencement of a CPLR article 78 proceeding, on remittal, the Southampton Board issued a resolution in January 1995 designating itself as the lead agency, and issuing a SEQRA positive declaration requiring the petitioners to prepare and circulate a DEIS (*see id.* at 242).

The petitioners then commenced a second CPLR article 78 proceeding challenging the Southampton Board's January 1995 determination. The Supreme Court concluded that the proceeding was ripe for review, and annulled the Southampton Board's resolution, noting that the DEC had strictly complied with SEQRA when it conducted the coordinated review. Both the Appellate Division and the Court of Appeals affirmed, agreeing that the petitioners' challenge to the issuance of the positive declaration presented a justiciable controversy ripe for judicial review.

At the outset of its analysis in *Rush*, the Court of Appeals expressly declined to create a bright-line rule that the issuance of a SEQRA positive declaration, requiring the preparation and circulation of a DEIS, is, in every instance, a mere "step in the agency decisionmaking process, and as such is not final or ripe for review" (*id.* at 243; *see Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d 1450, 1451 [2011]), or, conversely, that it is always a final agency action subject to judicial review. As the Court of Appeals discussed, such a determination in each case must be based on consideration of a number of factors (*see Matter of Gordon v Rush*, 100 NY2d at 242).

The Court of Appeals noted in *Rush* that to present a matter ripe for judicial review, the agency action must first " 'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process' " (*id.*, quoting *Matter of Essex County v Zagata*, 91 NY2d at 453; *see Chicago & Southern Air Lines, Inc. v Waterman S. S. Corp.*, 333 US 103, 113 [1948]). As explained by the Court of Appeals, echoing the case law on ripeness generally, this requires a pragmatic evaluation of whether the agency "has arrived at a definitive position on the issue that inflicts an actual, concrete injury" (*Matter of Gordon v Rush*, 100 NY2d at 242 [internal quotation marks omitted]; *see Matter of Essex County v Zagata*, 91 NY2d at 453; *see also Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation*, 23 NY3d 1 [2014]; *Red Wing Props., Inc. v Town of Milan*, 71 AD3d 1109, 1110 [2010]). Where the alleged harm is purely speculative, the matter will not be ripe for judicial review (*see Matter of Alamit Props. Co. v Planning Bd. of Town of Harrison*, 159 AD2d 703, 704 [1990]).

The Court of Appeals in *Rush* concluded that the Southampton Board's issuance of a SEQRA positive declaration "clearly impose[d] an obligation," inasmuch as it required the petitioners in that proceeding to prepare and circulate a DEIS after a contrary conclusion had been reached by the DEC in the initial stage of environmental review (*Matter of Gordon v Rush*, 100 NY2d at 242). Because such a requirement is likely to demand "considerable time and expense," the Court of Appeals stated that such an obligation, under the circumstances of that case, imposed "actual, concrete harm" (*id*. at 242, 243). Crucially, the Court of Appeals' conclusion was not based solely on the time and expenditure of resources necessary to prepare a DEIS, but also on the fact that the petitioners had already been through the coordinated environmental review process, resulting in the issuance of a negative declaration by the DEC as lead agency, as well as the fact that the Southampton Board had not availed itself of the opportunity to participate in that review process (*id*. at 243).

Here, too, a SEQRA positive declaration has been issued, requiring Ranco to prepare and circulate a DEIS. Ranco contends that it would incur a tremendous expense to prepare the DEIS, and that the Town would receive no benefit from such a study, as it has permitted Ranco's (or its tenant's) longstanding use of the property in a manner consistent with a heavy industrial zoning designation. We acknowledge that requiring the petitioner to prepare a DEIS will cause the petitioner to incur considerable time and expense. In other words, this requirement will " 'impose an obligation' " on Ranco (*id*. at 242, quoting *Matter of Essex County v Zagata*, 91 NY2d at 453; *see Chicago & Southern Air Lines, Inc. v Waterman S.S. Corp*., 333 US at 113), and, depending on the circumstances of the case, might "inflict[ ] an actual, concrete injury" (*Matter of Gordon v Rush*, 100 NY2d at 242 [internal quotation marks omitted]; *see Matter of Essex County v Zagata*, 91 NY2d at 453; *see also Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation*, 23 NY3d 1 [2014]; *Red Wing Props., Inc. v Town of Milan*, 71 AD3d at 1110). As the Court of Appeals suggested, however, the need to expend time and money in preparing and circulating a DEIS, standing alone, is not determinative.

Another factor to be considered pursuant to *Rush* in ascertaining whether an agency determination is ripe for judicial review is whether "the apparent harm inflicted by the action may not

be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (*Matter of Gordon v Rush*, 100 NY2d at 242 [internal quotation marks omitted]; *see Matter of Essex County v Zagata*, 91 NY2d at 453). On the record before us, it does not appear that the apparent resulting harm to be inflicted on Ranco by the Town Board's determination requiring the preparation and circulation of a DEIS will be prevented or significantly ameliorated by further administrative action or by steps available to Ranco (*see Matter of Gordon v Rush*, 100 NY2d at 242; *Matter of Essex County v Zagata*, 91 NY2d at 453). However, this factor too, standing alone, is not determinative.

Ultimately, in *Rush*, the Court of Appeals concluded that, in light of the harm inflicted by the issuance of the positive declaration, which required the preparation and circulation of a DEIS and involved the expenditure of time and resources *after* the petitioners had already been through a coordinated environmental review process, and a negative declaration had been issued by the DEC, the issuance of a positive declaration constituted a final administrative action ripe for judicial review (*see Matter of Gordon v Rush*, 100 NY2d at 243).

However, a number of factors distinguish this matter, and indeed perhaps the typical case, from the circumstances presented in *Rush*. Here, while the parties settled their dispute in the prior action as to the adjacent parcel without a SEQRA positive declaration and without the need for a DEIS, the instant case involves a different parcel from that involved in the prior action. There is no dispute or confusion as to which agency is the lead agency for purposes of environmental review. Ranco has not already been subject to a review process coordinated by multiple governmental agencies. The Town Board did not previously forgo an opportunity to be heard in any such process. A SEQRA negative declaration has not previously been issued in connection with the proposal to rezone the subject parcel, and there has not been a prior determination that a DEIS is not warranted. Finally, as the Supreme Court correctly noted, a sufficient record has yet to be established on this matter.

Again, the Court of Appeals in *Rush* declined to adopt a bright-line rule, as advocated by the Southampton Board, that a SEQRA positive declaration is never a final determination ripe for judicial review (*see id.* at 243; *Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d at 1451). As the Appellate Division, Third Department, observed in this regard,

" 'the Court of Appeals has declined to adopt any bright-line rules designating particular actions as final, preferring instead to apply the foregoing test on a case-by-case basis in order to avoid inappropriate results in particular circumstances. Thus, in applying the test, we attempt to balance the goals of preventing piecemeal review of each determination made in the context of the SEQRA process . . . against the possibility of real harm to the complaining party' " (*Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d at 1451-1452, quoting *Matter of Guido v Town of Ulster Town Bd.*, 74 AD3d 1536, 1537 [2010]).

To construe *Rush* so broadly as to permit judicial review every time a SEQRA positive declaration is issued would result in a proliferation of piecemeal review of the SEQRA process. In other words, to allow immediate challenges to these preliminary SEQRA decisions, as a matter of course, "would subject the entire SEQRA process to unrestrained review which could necessarily result in significant delays in what is already a detailed and lengthy process" (*Matter of Town of Coeymans v City of Albany*, 237 AD2d 856, 857 [1997]). The circumstances in *Rush* would seem to present the exception rather than the rule. However, again, whether a SEQRA positive declaration presents a matter ripe for judicial review is a multi-faceted determination involving consideration of a number of factors and circumstances undertaken on a case-by-case basis. The considerations expressly discussed in Rush are not exhaustive. Ultimately, as discussed above and as determined by the Supreme Court, this matter is readily distinguishable from *Rush* in particularly relevant respects.

Under the circumstances of this case, the expense to be incurred in the preparation and circulation of a DEIS, substantial though it may be, is not sufficient, in and of itself, to require us to conclude that the matter is ripe for judicial review (*compare Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d 1450 [2011]). Here, the issuance of the positive declaration appears to be the initial step in the process for these parties, albeit several years after the application for rezoning was submitted.

Based on our review of all relevant factors and circumstances, we conclude that the issuance here of a SEQRA positive declaration, requiring that Ranco prepare and circulate a DEIS, is a

preliminary step in the decision-making process, and that, as such, this matter is not ripe for judicial review.

> " 'Petitioner may well obtain approval of its . . . application following preparation of a [DEIS] and thus, notwithstanding the considerable expenses and time associated with its preparation, it cannot be said that [the Town Board's] issuance of this positive declaration constitutes a "definitive" position on an issue which inflicts an actual, concrete injury' " (*Matter of Modern Landfill, Inc. v New York State Dept. of Envtl. Conservation*, 21 AD3d 1381, 1382 [2005], quoting *Matter of Sour Mtn. Realty v New York State Dept. of Envtl. Conservation*, 260 AD2d 920, 922 [1999]).

Therefore, the Supreme Court properly determined, under the circumstances of this case, that the matter is not ripe for judicial review. The petitioner's remaining contentions need not be reached in light of our determination.

Accordingly, the order and judgment is affirmed.

HALL, COHEN and MILLER, JJ., concur.

Ordered that the order and judgment is affirmed, with costs.