*664 OPINION OF THE COURT
Francesca E. Connolly, J.[1] ,
The petitioner commenced this proceeding pursuant to CPLR article 78 to review a determination of the respondent Planning Board of the Village of Tarrytown (hereinafter the Board), dated October 27, 2014, which directed the petitioner to submit a supplemental environmental impact statement (hereinafter SEIS) in connection with its application for site plan approval of property located at 112 Wilson Park Drive, Village of Tarry-town, New York.
Presently pending before this court are two motions: (1) the Board’s motion to dismiss; and (2) the motion of nonparty Friends of Brace Cottage (hereinafter FBC) to intervene. For the reasons that follow, the Board’s motion to dismiss is denied and FBC’s motion to intervene is granted upon the condition that it serve and file an amended answer in compliance with General Associations Law § 12.
Factual and Procedural Background
The Petition
According to the petition, in or about 2004, the petitioner’s predecessor in title applied to the Board for approval to subdivide a 48.1 acre parcel into 17 individual residential lots in connection with a development entitled “Legends at Wilson Park.” Of relevance to the issues in this article 78 proceeding, the sole existing structure in the development area was a two-story stone house (hereinafter the stone house or Brace Cottage), which the petitioner claims was built in or about 1908, that served as a gatehouse for an estate house owned by Charles C. Brace known as Braceholme. The Braceholme mansion was demolished in 1986.
A State Environmental Quality Review (SEQR or SEQRA) scoping document for the subdivision application adopted by the Board required a draft environmental impact statement (DEIS) to address, among other things, the potential impacts of the proposed action, including “the effect of development on . . . any eligible or designated historic resources, and the stone house on the property.” A DEIS was submitted to the Board on *665 February 1, 2005, which included a section entitled “Historic Resources,” stating that the stone house on the property, which was to be removed as part of the project, was not currently listed on the National Register of Historic Places.
As a result of the review process, a final environmental impact statement (FEIS) was submitted to the Board on October 19, 2006, modifying the proposed development by, among other things, reducing the number of proposed residential lots from 17 to 14 and dedicating approximately 30 acres to open space. The FEIS included an archeological field recognizance report by Hartgen Archeological Associates, Inc., which concluded that the stone house on the property “appears to be architecturally significant” and recommending that, if the house is to be demolished or renovated, it should be further documented.
On June 25, 2007, the Board adopted a findings statement selecting a 14-lot cluster subdivision plan, i.e., the “Enhanced Park Plan,” as the preferred alternative. The findings statement indicated that the stone house was the sole “extant” structure in the project area. On November 22, 2010, the Board granted conditional final subdivision approval and, on January 4, 2011, the final subdivision plat was filed with the Westchester County Clerk. The final subdivision map indicates that the stone house is “to be removed.”
Subsequently, the petitioner was required to obtain site plan approval for each of the 14 individual residential lots. The petitioner has developed and conveyed title to seven of the 14 lots, and is in contract to develop and sell the 1.36-acre lot currently occupied by the stone house. The instant matter arose within the context of a site plan application to develop that lot.
According to the petitioner, during public hearings held as part of the site plan approval process, members of the public, including a descendant of Charles C. Brace, made presentations to the Board urging it to take steps to preserve the stone house, citing its alleged historical and architectural significance.
Accordingly, on October 27, 2014, the Board directed the petitioner to prepare an SEIS based upon its receipt of newly discovered evidence relating to Brace Cottage.[2] The determination was memorialized in a positive declaration dated November 3, 2014, stating:
*666 “On June 25, 2007 the Planning Board accepted the Findings Statement for the Legends at Wilson Park. . . . Final Subdivision approval was granted on November 22, 2010. Subsequent to Final Subdivision approval, the Planning Board received newly discovered evidence relating to the Brace Cottage. This information was not included in the DEIS and FEIS. On October 27, the applicant was directed to prepare a SEIS because the proposed razing of Brace Cottage may pose a potential significant adverse environmental impact.” (Positive Declaration dated Nov. 3, 2014 at 1.)
The positive declaration included the following reasons supporting the determination:
“The Brace Cottage was originally built in 1880 and then rebuilt by Charles Brace to complement his mansion ‘Braceholme’ completed in 1910. Brace Cottage may be a structure of both historical and architectural significance; furthermore, it may be one of only a handful of buildings which remain from ‘The Golden Age of the Tarrytowns’ (1874 to 1918). The structure had been occupied as a residence starting in 1880 and remains in nearly ‘as-built’ condition. Because Brace Cottage has the potential to be eligible for listing on the National Register of Historic Places, the proposed razing of the structure may pose a potential significant adverse impact.” (Id. at 2.)
The petition seeks to set aside the Board’s determination to require an SEIS as arbitrary and capricious and to direct the Board to act upon and approve its application as a type II SEQRA exempt action.
The Board’s Motion to Dismiss (Motion Sequence No. 2)
The Board moves to dismiss the proceeding, arguing that the determination to require the SEIS was a non-final determination not subject to judicial review.
The petitioner opposes the motion arguing that intermediary SEQRA determinations are ripe for review under certain circumstances, and that this matter meets the criteria. Specifically, the petitioner contends that the determination imposes actual injury on it by forcing it to expend time and money to *667 prepare the SEIS and that the previous environmental review process for the subdivision application took into account the historical significance of the stone house, but nevertheless approved a final subdivision plat calling for the house’s removal. Further, the petitioner contends that the Board lacked jurisdiction to require an SEIS because the subdivision application had concluded and is no longer pending before the Board.
FBC’s Motion to Intervene (Motion Sequence No. 3)
In a separate motion, nonparty FBC moves to intervene as a respondent in this proceeding, submitting, among other things, a proposed answer with appendix and the affidavit of its president, Mark J. Fry. In support of the motion to intervene, Fry avers, in relevant part, that he is president of FBC, a member of the Tarrytown Historical Society, a member of the Tarry-town Lakes Committee, and a member of the National Trust for Historic Preservation. According to Fry, FBC is a membership organization “dedicated to preventing the demolition of the last remnant of Braceholme . . . [FBC] believes that Brace Cottage is an irreplaceable asset which cannot be recreated and must, therefore, be preserved at all costs” (Fry aff 1 32). The founding members of FBC include eight direct descendants of Charles C. Brace. FBC’s elected executive officers include vice-president Cathy Ruhland and secretary/treasurer Gregory Gall. FBC’s members also include several architects and historians.
Fry states that FBC and its members have spent countless hours researching Brace genealogy, interviewing members of the Brace family, organizing and conducting site visits to Brace Cottage, contacting and soliciting experts in history and architecture to opine on the merits of preserving Brace Cottage, and advocating and lobbying for its preservation. In connection with the petitioner’s application for site plan approval to develop the lot occupied by Brace Cottage, FBC and its members attended numerous public hearings and submitted numerous letters and documents to the Board opining on the historical and architectural significance of the Brace Cottage. FBC seeks leave to intervene as a respondent based upon its interest in the outcome of this proceeding, and its participation in the proceeding that led to the Board’s determination.
The petitioner opposes the motion to intervene, arguing that FBC, as an unincorporated association, lacks capacity to appear as a party in its own name, and can only appear by its president or treasurer. Further, the petitioner contends that *668 FBC has no cognizable interest warranting intervention as a party and, in any event, lacks standing because it fails to demonstrate that its members would suffer a direct injury different from the public at large.
Discussion/Analysis
1. The Board’s Motion to Dismiss is Denied
Pursuant to CPLR 7801, “a proceeding under this article shall not be used to challenge a determination . . . which is not final” (CPLR 7801 [1]). There is no bright-line rule for whether a positive declaration requiring further environmental review constitutes a final determination ripe for review (see Matter of Gordon v Rush, 100 NY2d 236, 242-243 [2003] [rejecting bright-line rule proposed by Town Board for whether positive declaration requiring DEIS was a final determination]). Rather, “whether a SEQRA positive declaration presents a matter ripe for judicial review is a multi-faceted determination involving consideration of a number of factors and circumstances undertaken on a case-by-case basis” (Matter of Ranco Sand & Stone Corp. v Vecchio, 124 AD3d 73, 86 [2d Dept 2014]).
“[I]n applying the test, [the Court] attempt [s] to balance the goals of preventing piecemeal review of each determination made in the context of the SEQRA process . . . against the possibility of real harm to the complaining party” (id. [internal quotation marks omitted]). When considering whether a determination inflicts real harm upon the applicant, courts may consider, among other factors, the time and expense of the additional environmental review, and whether the applicant has “already been through [a] coordinated review process” (see Gordon v Rush, 100 NY2d at 243). However, these factors are not exhaustive, and the reviewing court must make a determination of finality based upon the facts and circumstances of the case before it (see Matter of Ranco Sand & Stone Corp. v Vecchio, 124 AD3d at 86).
As an initial matter, the court notes that, although the positive declaration in this case that directs the petitioner to submit an SEIS arose within the context of the petitioner’s pending site plan application, the positive declaration effectively directs the reopening of the petitioner’s subdivision application, which was finalized in 2010. Development pursuant to that subdivision approval has substantially proceeded, with the petitioner developing and conveying away seven of the 14 residential lots.
*669 Thus, the fact that the petitioner has already been through a completed coordinated review process is a factor that weighs heavily in favor of permitting review of the Board’s determination. Even if the Board ultimately permits the petitioner to remove Brace Cottage, as noted by the Court of Appeals in Gordon v Rush, the “petitioner! ] would have already spent the time and money to prepare the [SEIS] and would have no available remedy for the unnecessary and unauthorized expenditures” (see Gordon v Rush, 100 NY2d at 243).
Moreover, given the length of time that has passed since the subdivision was approved, it cannot be said that the petitioners are seeking to challenge a “preliminary step in the decision-making process” (Matter of Young v Board of Trustees of Vil. of Blasdell, 221 AD2d 975, 977 [4th Dept 1995] [“A SEQRA determination is usually considered to be a preliminary step in the decision-making process and, therefore, is not ripe for judicial review until the decision-making process has been completed”], affd 89 NY2d 846 [1996]). Further, as the subdivision application was finalized over four years ago, the instant proceeding cannot be characterized as an attempt to engage in piecemeal litigation of the SEQRA process (cf. Matter of Town of Coeymans v City of Albany, 237 AD2d 856, 857 [3d Dept 1997] [holding that permitting judicial review of preliminary determinations “would subject the entire SEQRA process to unrestrained review which could necessarily result in significant delays in what is already a detailed and lengthy process”]).
Finally, the court notes that the petitioners have raised the issue of whether the Board had jurisdiction to effectively reopen the subdivision application, which has been finalized for years. While the “mere assertion of jurisdiction alone” does not constitute “actual, concrete harm,” the harm flows from the fact that the issuance of the positive declaration requiring further environmental review requires “the expenditure of time and resources, after petitioners had already been through the coordinated review process” (Gordon v Rush, 100 NY2d at 243).[3] Since the petitioners have embarked upon development pursuant to the approved subdivision plan that was approved sev *670 eral years ago, the court finds that it would be unfair to require them to expend additional resources for environmental reviews of an already-approved application without first obtaining judicial review of the validity of the Board’s request.
Under these unique circumstances, the court finds that the determination is ripe for review and, therefore, the Board’s motion to dismiss is denied.
2. FBC’s Motion to Intervene is Conditionally Granted
a. FBC has Standing
As an initial matter, the petitioner’s contention that FBC lacks standing to appear as a party in this proceeding lacks merit. An association or organization has standing when (1) “one or more of its members would have standing to sue,” (2) “the interests it asserts are germane to its purposes,” and (3) “neither the asserted claim nor the appropriate relief requires the participation of the individual members” (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]; Matter of Schlemme v Planning Bd. of City of Poughkeepsie, 118 AD3d 893, 894 [2d Dept 2014]).
As to the first prong of this test, an individual has standing where he or she “would suffer direct harm, injury that is in some way different from that of the public at large” (Society of Plastics Indus., 77 NY2d at 774) and “the in-fact injury of which [he or she] complains . . . falls within the ‘zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted” (id. at 773, quoting Lujan v National Wildlife Federation, 497 US 871, 883 [1990]). In Matter of Save the Pine Bush, Inc. v Common Council of City of Albany (13 NY3d 297 [2009]), the Court of Appeals held that, in land-use and environmental cases, “a person who can prove that he or she uses and enjoys a natural resource more than most other members of the public has standing ... to challenge government actions that threaten that resource” (id. at 301).
Here, FBC established that its members, who have individually engaged in research and various forms of advocacy for the preservation of Brace Cottage, have an appreciation of the structure as a potentially significant historic and architectural site that is greater than most other members of the public (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305 [the petitioners’ allegation that they “use the Pine Bush for recreation and to study and enjoy *671 the unique habitat found there” was sufficient to meet “the Society of Plastics test by showing that the threatened harm of which petitioners complain will affect them differently from ‘the public at large’ ”]; Matter of Long Is. Pine Barrens Socy., Inc. v Central Pine Barrens Joint Planning & Policy Commn., 113 AD3d 853, 856 [2d Dept 2014] [“the petitioners established that Amper, in both his individual and professional capacities, uses and enjoys the Pine Barrens to a greater degree than most other members of the public. The fact that Amper lives some distance from the property in question is not dispositive”]; Matter of Shepherd v Maddaloni, 103 AD3d 901, 906 [2d Dept 2013] [“(The petitioners’) allegations that the approved construction project will harm their regular use, enjoyment, and interest in protecting the ecological health of Stony Brook Harbor, which is adjacent to their property, are sufficient to confer standing”]).
Further, while many cases analyzing an organization’s standing to challenge the environmental review process deal with matters more traditionally understood to be a part of the environment, such as open space, habitat preservation, or pollution control measures, FBC’s interest in the preservation of Brace Cottage also falls within the zone of interests sought to be protected by SEQRA, which broadly defines the “environment” to include, among other things, “objects of historic or aesthetic significance” (ECL 8-0105 [6] [SEQRA definition of “environment”]). Thus, FBC’s individual members would have standing to appear in this action.
Additionally, FBC meets the second and third prongs of the organizational standing test insofar as its interests in the instant proceeding are germane to its goal of preserving Brace Cottage and its requested relief, that this court uphold the Board’s determination directing the petitioner to submit an SEIS, does not require the participation of its individual members (see Matter of Long Is. Pine Barrens Socy., Inc. v Central Pine Barrens Joint Planning & Policy Commn., 113 AD3d at 856 [“The Society meets the second and third prongs of the organizational standing test, namely that its interests in the instant proceeding are germane to its purposes, and that ‘neither the asserted claim nor the appropriate relief requires the participation of the individual members’ ”]).
Accordingly, FBC has standing to appear in this action.
*672 b. FBC Established its Entitlement to Intervene
Since FBC has standing to appear in this action, the court turns to the question of whether intervention is warranted. CPLR 7802 (d) provides that the court may permit “other interested persons to intervene” in a proceeding pursuant to CPLR article 78. Whether to permit intervention is a matter addressed to the sound discretion of the court (see Matter of White v Incorporated Vil. of Plandome Manor, 190 AD2d 854 [2d Dept 1993]). Notably, “[CPLR 7802 (d)] grants the court broader power to allow intervention in an article 78 proceeding than is provided pursuant to either CPLR 1012 or 1013 in an action” (Matter of Elinor Homes Co. v St. Lawrence, 113 AD2d 25, 28 [2d Dept 1985]; see Roosevelt Islanders for Responsible Southtown Dev. v Roosevelt Is. Operating Corp., 291 AD2d 40, 48 [1st Dept 2001]). The sole criteria for intervention in a CPLR article 78 proceeding is whether the person is “interested” and, thus, a party seeking intervention need not necessarily show that “the representation of [its] interest by the parties is or may be inadequate” (see CPLR 1012 [a] [2]; see e.g. Elinor Homes Co. v St. Lawrence, 113 AD2d at 28).
As discussed with regard to the issue of FBC’s standing, FBC, an organization whose sole purpose is to promote and preserve Brace Cottage as a unique architectural and historical structure, has “a real and substantial interest in the outcome of [this] proceeding[ ]” (Matter of Bernstein v Feiner, 43 AD3d 1161, 1162 [2d Dept 2007], quoting County of Westchester v Department of Health of State of N.Y., 229 AD2d 460, 461 [2d Dept 1996]). While the petitioner contends that FBC must demonstrate a cognizable interest akin to a financial stake or property right in the outcome of the proceeding, the law recognizes that a legitimate legal interest, particularly in matters concerning the environment and cultural or aesthetic resources, cannot always be set forth in terms of potential monetary gain or loss, or by making a claim to ownership of property (see e.g. Lujan v Defenders of Wildlife, 504 US 555, 562-563 [1992] [“the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing” (emphasis added)]). Further, the petitioner incorrectly asserts that FBC lacks an interest in this proceeding because “Brace Cottage is a privately owned structure, on privately owned lands, that is not and has not been accessible to the public” (mem of law in opp at 14). Although efforts at historic preservation are sometimes in conflict *673 with the development goals of property owners (see e.g. Penn Central Transp. Co. v New York City, 438 US 104, 132 [1978]), the state legislature has recognized that the benefits of preserving the “historical, archeological, architectural and cultural heritage of the state” inure to the community at large by offering residents “a sense of orientation and civic identity,” that such heritage “is fundamental to our concern for the quality of life,” and that it “produces numerous economic benefits to the state” (see PRHPL 14.01). Thus, the court cannot agree with the petitioner’s contention that FBC’s “interest” in this proceeding is not a valid one for purposes of CPLR 7802 (d).
Accordingly, FBC has established its entitlement to intervene as a respondent.
c. FBC’s Lack of Capacity May be Cured
The petitioner correctly points out that FBC, as an unincorporated association, has no legal existence independent of its members and, therefore, lacks capacity to sue in its own name (see Martin v Curran, 303 NY 276, 280 [1951] [“A voluntary, unincorporated membership association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members”]).
While FBC itself lacks capacity to appear in its own name, it is statutorily authorized to appear by its president or treasurer (see Community Bd. 7 of Borough of Manhattan v Schaffer, 84 NY2d 148, 155 [1994] [“unincorporated associations, which are voluntary congregate entities, are accorded the capacity to bring suit through their presidents or treasurers by statute”]). General Associations Law § 12 provides, in relevant part:
“An action or special proceeding may be maintained, by the president or treasurer of an unincorporated association to recover any property, or upon any cause of action, for or upon which all the associates may maintain such an action or special proceeding, by reason of their interest or ownership therein, either jointly or in common.”
However, the failure of an unincorporated association to appear by its president or treasurer has been held to be a curable pleading defect (see Miller v Student Assn. of State Univ. of N.Y. at Albany, 75 AD2d 843, 843 [2d Dept 1980] [“the failure to designate the president in his representative capacity as the defendant is an irregularity which may be corrected in the *674 absence of prejudice to a right of any party”]; Concerned Citizens of Albany-Shaker Rd. v State of New York, 140 AD2d 842, 843 [3d Dept 1988] [“the complaint does not comport with General Associations Law § 12 in that the action has not been brought either by the president or treasurer of the unincorporated association, or in the names of all its individual members; however, that deficiency appears correctible” (emphasis added and citations omitted)]; see also Gianunzio v Kelly, 90 AD2d 623, 624 [3d Dept 1982] [“Assuming, arguendo, that plaintiffs were required to plead their legal status as treasurer and unincorporated association, defendant has failed to establish that he has been prejudiced by plaintiffs’ omission. In the absence of such prejudice, the court may disregard any irregularity in this pleading”]).
Accordingly, in order to give FBC an opportunity to cure this defect, the court conditionally grants its motion to intervene, and FBC may intervene as a respondent so long as, within 10 days of service upon it of this order with notice of entry, it serves and files an amended answer appearing by its president or treasurer in conformity with General Associations Law § 12.[4]
Based upon the foregoing, it is hereby, ordered that the motion of the Planning Board of the Village of Tarrytown to dismiss the proceeding is denied; and it is further ordered that the motion of nonparty Friends of Brace Cottage to intervene is conditionally granted upon its serving and filing an amended answer in conformity with General Associations Law § 12 within 10 days of service upon it of this order with notice of entry; and it is further ordered that all other relief requested and not decided herein is denied.

. By order dated December 5, 2014, this proceeding, selected as suitable for the Environmental Claims Part, was transferred to the undersigned by the Administrative Judge for the Ninth Judicial District (Hon. Alan D. Scheinkman, J.S.C.).

. “The lead agency may require a supplemental EIS, limited to the specific significant adverse environmental impacts not addressed or *666 inadequately addressed in the EIS that arise from . . . newly discovered information” (Department of Environmental Conservation Regulations [6 NYCRR] § 617.9 [a] [7] [i] [b]).

. The court notes that it is not, at this time, rendering a decision on the issue of whether the Board had the legal authority to require an SEIS to be prepared in connection with the previously finalized subdivision application. Since the resolution of that potentially dispositive contention in the petitioner’s favor could result in granting the petition, the proper procedural context to decide that issue is after joinder of issue, not in the context of the Board’s motion to dismiss on the ground of ripeness.

. The amended answer must otherwise be substantively identical to the proposed answer filed with its motion to intervene.