[49 NE3d 1165, 29 NYS3d 873]

In the Matter of RANCO SAND AND STONE CORP., Appellant, v
PATRICK VECCHIO et al., Respondents.

Argued February 18, 2016; decided March 31, 2016

Leonard J. Shore, Commack, for appellant.

*Devitt Spellman Barrett, LLP*, Smithtown (*John M. Denby* of counsel), for respondents.

**OPINION OF THE COURT**

RIVERA, J.

At issue on this appeal is the justiciability of Ranco Sand and Stone Corp.'s challenge to a local town board's positive declaration pursuant to the State Environmental Quality Review Act (ECL art 8 [SEQRA]) that Ranco's proposed rezoning may have a significant effect on the environment, and requiring Ranco to prepare and submit a draft environmental impact statement (DEIS). In accordance with *Matter of Gordon v Rush* (100 NY2d 236, 242 [2003]), we conclude that the Town's SEQRA positive determination is not ripe for judicial review.

Ranco owns two parcels of contiguous property in an area zoned for residential use in Suffolk County in Smithtown, New York (Town). In 1997, Ranco leased parcel one to a private school bus company which, at all times relevant to this appeal, used it as a bus yard and trucking station. Although this use is unapprovedly nonconforming, the Town had not enforced residential zoning requirements on Ranco. Nevertheless, in 2002, Ranco applied to rezone parcel one from residential to heavy industrial use.

In preparation for a public hearing on the application, the Town's Director of the Planning and Community Development Department prepared a report which addressed various plan-

ning considerations, stressed the potential environmental impact of the proposed rezoning, and recommended approval of the application, if made subject to significant limiting land use conditions. The report characterized Ranco's zoning application as "a request for a significant amendment to the [Town's] Comprehensive Plan." It highlighted the importance of assessing the rezoning application fully aware of the physical and legal context of parcel one, including: previously documented problems in current and future development in the area; the indefinite adjournment of several zone change petitions; recent litigation involving the property immediately to the north of, and held in common ownership with, parcel one, which were rezoned for heavy industrial use purposes in accordance with a stipulation of settlement; and the existence of nonconforming zoning activities on nearby properties.

With these considerations in mind, the report described the effects of rezoning parcel one on the surrounding environs. As the report explained, parcel one is a 2.16 acre site, partially cleared, and bounded on the east by the Sunken Meadow Parkway and several single-family homes located directly across the road. Along its other borders is property to the west used for industrial purposes, undeveloped land to the south, and to the north is property used as a trucking station. Although parcel one is located in an area with some nonconforming heavy industrial uses, the report clarified that because such uses tend to generate impacts that are not compatible with residential uses, they are normally separated from residential zones. As such, the report emphasized that it would be preferable not to locate heavy industrial uses so near the Sunken Meadow Parkway and existing single-family homes. The report further stressed that the "chief concern for all development in this area is the protection of existing residential developments east of the parkway and protection of the [parkway] itself."

The report went on to warn that development on parcel one "could affect the parkway directly" and set a precedent for future uses and structures in the entire area west of the parkway. The report determined that because parcel one is a mere 400 feet from several single-family residences, those homes could be affected by noise, odors, vibration, air pollution, glare, and other visual impacts, as well as traffic generation associated with heavy industrial uses. Moreover, as the report found, due to this close proximity to residences and

residentially-zoned properties, parcel one's size and shape are not appropriate for certain types of heavy industrial uses. The report further noted that rezoning would permit more intense industrial uses than those previously conducted on parcel one and some lots to its north.

Turning to the merits of Ranco's application, the report advised that if the rezoning were approved, the Town Board should take into account the effects on the residences and parkway. It also suggested that the Town Board consider whether to prohibit, outright, certain high-impact industrial uses on parcel one, and whether to require the installation of buffers. It concluded that "[a] study to develop a comprehensive approach to zoning and development may be appropriate before further changes are approved." The report ultimately recommended that the request be approved with certain conditions, and that the "rezoning should be consistent with a comprehensive planning and zoning analysis of surrounding lands."

After the public hearing, the Town's Planning Board, whose members advise the Town Board on zoning matters, recommended approval of the application in 2004. No further action was taken on the application for another five years, when the Town Board, acting as the lead agency under SEQRA,[1] adopted a resolution issuing a positive declaration that rezoning parcel one "may have a significant effect on the environment" and required Ranco to prepare a DEIS.[2]

The Town Board's positive declaration stated that the rezoning was "inconsistent with the planned use of [parcel one as a single-family residence, bus yard, and trucking station] and with the [Town's] Comprehensive Master Plan." Similar to the findings in the Director's report, the declaration stated that rezoning was "incompatible with existing residential land uses in the vicinity," and development of parcel one "has the potential to result in increased environmental impacts upon

---

1. A "Lead agency" under SEQRA is "principally responsible for undertaking, funding or approving an action, and therefore responsible for determining whether an environmental impact statement is required in connection with the action, and for the preparation and filing of the statement if one is required" (6 NYCRR 617.2 [u]).

2. A DEIS is an initial statement, prepared by either the lead agency or the applicant, that describes possible "significant adverse environmental impacts," which may be caused by the proposed action (see 6 NYCRR 617.2 [n]). The DEIS includes alternatives and mitigation measures, and is circulated for review and comment to assist the agency in determining the environmental consequences of the proposed action (see id.).

neighboring residentially-developed properties and upon the Sunken Meadow Parkway corridor relative to development of the subject parcel in accordance with the existing zoning." The positive declaration further stated that because rezoning would allow "more intensive heavy industrial uses" than those presently conducted on parcel one, there was potential for increased impacts on noise, air quality, light, traffic, and the increased use, storage and handling of toxic and hazardous materials. It further noted that rezoning could serve as "a precedent for future downzonings throughout the Town to accommodate unpermitted land uses . . . in contravention of the Town's zoning code."

Ranco commenced this CPLR article 78 proceeding against respondents the Town of Smithtown and the members of the Town Board, seeking to annul the positive declaration as "arbitrary, capricious, [and] unauthorized," and requesting mandamus relief directing the Town to process the rezoning application without a DEIS. In support of its petition, Ranco asserted that the declaration imposed a hardship on the company because it would force it to incur between $75,000 and $150,000 in expenses in completing the DEIS. Ranco also argued that a DEIS was unnecessary, as demonstrated by the prior rezoning for heavy industrial use of Ranco's contiguous parcel (parcel two), which was done without a DEIS. In that regard, Ranco claimed that the court should treat the Town's prior rezoning of parcel two as res judicata and binding on the Town with respect to Ranco's parcel one application.

Parcel two had been rezoned from residential to heavy industrial use in accordance with a stipulation of settlement in litigation commenced by its prior owner, the deceased spouse of Ranco's majority owner. This is the same litigation and settlement referenced in the Director's report. Ranco argued that the two properties have been used as a single parcel, and in the same manner ever since the litigation over the rezoning of parcel two. Ranco further pointed out that in 1999, during the course of the parcel two rezoning litigation, Supreme Court did a field visit of the area and observed that the Town had been lax in enforcing its zoning ordinance for 10 years, and over time the area had changed, and was by then characterized by heavy and light industrial uses and mining operations, which resulted in major environmental effects. Ranco contended nothing had changed in the area since the court's visit, and that a DEIS would not provide any new information relevant to the rezoning application.

Respondents moved to dismiss the petition for failure to state a cause of action. Supreme Court granted the motion, finding the matter not ripe for judicial review. The Appellate Division affirmed, concluding that the SEQRA positive declaration requiring Ranco to prepare a DEIS was the initial step in the decision-making process, and therefore did not give rise to a justiciable controversy (124 AD3d 73, 86 [2d Dept 2014]). We granted leave to appeal (25 NY3d 902 [2015]).

Ranco reasserts its claim below that the Town Board's adoption of a positive declaration pursuant to SEQRA is a justiciable controversy because the requirement that Ranco prepare a DEIS will cause it actual and real financial injury. In support of this argument, Ranco asserts that it will incur significant expenses in preparing a DEIS, which it contends is unnecessary since Ranco merely seeks to continue with its long-standing and long-tolerated use of parcel one, but under a proper zoning classification. The Town counters, on behalf of all respondents, that the positive declaration is not a final administrative determination ripe for review because it continues to be subject to action by the Town Board and any injury to Ranco may be prevented or ameliorated by subsequent decisions.

To challenge an administrative determination, the agency action must be "final and binding upon the petitioner" (*Walton v New York State Dept. of Correctional Servs.*, 8 NY3d 186, 194 [2007], quoting CPLR 217 [1]; *see* 7801 [1] [article 78 available for challenges to "final" determinations]). The finality requirement "draw[s] from case law on ripeness for judicial review" (*Walton*, 8 NY3d at 195, citing *Matter of Essex County v Zagata*, 91 NY2d 447, 453-454, 454 n [1998]; *Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510 [1986], *cert denied* 479 US 985 [1986]). As the Court has recognized, the ripeness doctrine is closely related to the finality requirement, and in order for an administrative determination to be final, and thus justiciable, it must be ripe for judicial review (*Matter of Essex County*, 91 NY2d at 453-454, 454 n).

In the context of a challenge to an action pursuant to SEQRA, this Court held in *Gordon* that a positive declaration is ripe for judicial review when two requirements are satisfied. First, "the action must 'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process' " (*Matter of Gordon*, 100 NY2d at 242 [citations omitted]). This threshold requirement consists of " 'a pragmatic

evaluation . . . of whether the "decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury" ' " (*id.*). Second, "there must be a finding that the apparent harm inflicted by the action 'may not be "prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" ' " (*id.*).

The proper application of the test announced in *Gordon* requires an understanding of the factual posture of that case. *Gordon* involved a challenge to a Town Board's positive declaration of potential significant environmental effects concerning proposed land use permit applications, and the Board's requirement that the property owners conduct a DEIS (100 NY2d at 242). The Board had declared itself as a lead SEQRA agency when issuing the declaration, notwithstanding that it had previously advised the Department of Environmental Conservation (DEC) that it did not wish to assume the role of lead agency and requested that DEC serve in such capacity (*id.* at 240-241). In response to the Board's request, DEC assumed lead agency status and eventually issued a negative environmental impact declaration, along with wetland permits to the property owners (*id.* at 240-242). When the owners then sought coastal erosion permits, the Board issued the positive declaration (*id.*).

This Court concluded that the Board's administrative action was ripe for judicial review because the Board's SEQRA declaration imposed an obligation on the petitioners to prepare and submit a DEIS, after they "had already been through the coordinated review process and a negative declaration had been issued by the DEC as lead agency," and where no apparent further proceedings would remedy the injury caused by the unnecessary and unauthorized expenditures associated with conducting a DEIS (*id.* at 243). Thus, *Gordon*'s analysis and its import must be considered in light of the Court's recognition that the administrative action in that case was potentially unauthorized because "the Board may not have had jurisdiction to conduct its own SEQRA review," given the existence of a prior negative declaration by a facially appropriate lead agency (*id.*).

Hoping to repeat the success of the property owners in *Gordon*, Ranco argues that it meets the two requirements as adopted in that case. Ranco claims that the Town's positive declaration imposes upon it an affirmative obligation to prepare a DEIS, at significant cost to Ranco, both as a lump sum of

between $75,000 and $150,000, and as a percentage of the rentals collected under the parcel one lease. We agree that the declaration has imposed an obligation on Ranco in satisfaction of the first requirement of our ripeness-for-review analysis.

Ranco next argues that the Town Board's declaration meets *Gordon*'s second requirement because, even assuming Ranco's application is approved and parcel one is rezoned for highly industrialized uses, Ranco cannot recoup the costs incurred and time spent on conducting a DEIS. Of course that may be true, but it is insufficient, without more, to distinguish Ranco's case from any other preliminary administrative action. Indeed, Ranco's approach would lead to convergence of the two requirements set forth in *Gordon* by reducing the analysis to whether a petitioner will incur unrecoverable costs. The inevitable result would be that every positive declaration requiring the creation of a DEIS would be ripe for review because the preparation of a DEIS by its nature carries financial costs that generally cannot be recouped, regardless of the outcome of the SEQRA process and the ultimate determination on a petitioner's zoning application. However, courts should seek to avoid this type of "piecemeal review of each determination made in the context of the SEQRA process [which] would subject it to 'unrestrained review . . . result[ing] in significant delays in what is already a detailed and lengthy process' " (*Matter of Guido v Town of Ulster Town Bd.*, 74 AD3d 1536, 1537 [3d Dept 2010]).

Moreover, and contrary to Ranco's suggestion, the ruling in *Gordon* was never meant to disrupt the understanding of appellate courts that a positive declaration imposing a DEIS requirement is usually not a final agency action, and is instead an initial step in the SEQRA process (*see e.g. Matter of Rochester Tel. Mobile Communications v Ober*, 251 AD2d 1053, 1054 [4th Dept 1998]). Instead, *Gordon* stands for the proposition that where the positive declaration appears unauthorized, it may be ripe for judicial review, as, for example, when the administrative agency is not empowered to serve as lead agency (*see Gordon*, 100 NY2d at 242-243), when the proposed action is not subject to SEQRA (*Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d 1450, 1452 [3d Dept 2011]), or when a prior negative declaration by an appropriate lead agency appears to obviate the need for a DEIS suggesting that further action is improper (*Gordon*, 100 NY2d at 243).

Ranco does not claim the declaration is unauthorized or that the property is not subject to SEQRA, nor does it present any

other basis to conclude that the Town Board acted outside the scope of its authority. Therefore, the matter is not ripe for judicial review. Based on this decision we need not address the merits of Ranco's challenge to the Town Board's action.

Accordingly, the Appellate Division order should be affirmed, with costs.

Chief Judge DıFıoRE and Judges PıGOTT, ABDUS-SALAAM, STEIN, FAHEY and GARCIA concur.

Order affirmed, with costs.